## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>       Plaintiff,<br><br>       v.<br><br>Frederick J. Hanna & Associates, P.C.,<br>Frederick J. Hanna, individually, Joseph<br>C. Cooling, individually, and Robert A.<br>Winter, individually,<br><br>       Defendants. | **Civil Action No.**<br><br>**COMPLAINT** |

The Consumer Financial Protection Bureau brings this action against

Frederick J. Hanna & Associates, P.C. (the "Firm"), Frederick J. Hanna, Joseph C.

Cooling, and Robert A. Winter (collectively, "Defendants") and alleges as

follows:

### Introduction

1.　　Defendants, a law firm and its principal partners, have sued

hundreds of thousands of Georgia consumers to collect debts that the consumers

allegedly owe to others.

2.　　To produce so many lawsuits, the Firm operates less like a law firm

than a factory. It relies on an automated system and non-attorney support staff to

determine which consumers to sue. The non-attorney support staff produce the lawsuits and place them into mail buckets, which are then delivered to attorneys essentially waiting at the end of an assembly line. The Firm's attorneys are expected to spend less than a minute reviewing and approving each suit.

3.     Using high-volume litigation tactics, Defendants collect millions of dollars each year, often from consumers who may not actually owe debts or may not owe debts in the amounts claimed.

## Jurisdiction and Venue

4.     This Court has subject-matter jurisdiction over this action because it presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

5.     Venue is proper because the Firm is located, resides, and transacts business in the Atlanta Division of this district, and Defendants are Georgia residents. 28 U.S.C. §§ 90(a)(2), 1391(b)(1); 12 U.S.C. § 5564(f); N.D. Ga. R. 3.1(B)(1).

## Parties

6.     The Bureau is an agency of the United States charged with regulating the offering and providing of consumer-financial products and

services under "Federal consumer financial laws," 12 U.S.C. § 5491(a), including the Fair Debt Collection Practices Act ("FDCPA") and the Consumer Financial Protection Act of 2010 ("CFPA"). 12 U.S.C. § 5481(12)(H), (14). The Bureau's regulatory authority extends to persons engaged in the collection of debt related to any consumer-financial product or service. 12 U.S.C. § 5481(5), (15)(A)(x). The Bureau has independent litigating authority to commence civil actions by its own attorneys to address violations of "Federal consumer financial laws," including the FDCPA and the CFPA. 12 U.S.C. § 5564(a)-(b); 15 U.S.C. § 1692l(b)(6).

7.    The Firm is headquartered and maintains its principal place of business in this district. The Firm regularly collects or attempts to collect, directly or indirectly, consumer credit-card debts on behalf of both credit-card issuers and debt buyers that purchase portfolios of defaulted credit-card debts. The Firm is therefore a "covered person" under the CFPA and a "debt collector" under the FDCPA. 12 U.S.C. § 5481(6), (15)(A)(x); 15 U.S.C. § 1692a(6).

8.    Frederick J. Hanna ("Hanna") is the Firm's president and principal owner. Hanna, a licensed attorney, regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another through consumer-debt-collection litigation. Hanna is therefore a "debt collector" under the FDCPA. 15 U.S.C. § 1692a(6). Hanna has managerial

responsibility for the Firm and materially participates in the conduct of its affairs, including the development and approval of the collection practices described in this Complaint. Hanna is therefore a "related person" under the CFPA. 12 U.S.C. § 5481(25)(C)(i)-(ii). Because Hanna is a "related person," he is deemed a "covered person" under the CFPA. 12 U.S.C. § 5481(25).

9.     Joseph C. Cooling ("Cooling") is the Firm's managing partner and a minority owner. Cooling, a licensed attorney, regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another through consumer-debt-collection litigation. Cooling is therefore a "debt collector" under the FDCPA. 15 U.S.C. § 1692a(6). Cooling has managerial responsibility for the Firm and materially participates in the conduct of its affairs, including the development and approval of the collection practices described in this Complaint. Cooling is therefore a "related person" under the CFPA. 12 U.S.C. § 5481(25)(C)(i)-(ii). Because Cooling is a "related person," he is deemed a "covered person" under the CFPA. 12 U.S.C. § 5481(25).

10.     Robert A. Winter ("Winter") is the Firm's managing partner and a minority owner. Winter, a licensed attorney, regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another through consumer-debt-collection litigation. Winter is therefore a "debt

collector" under the FDCPA. 15 U.S.C. § 1692a(6). Winter has managerial

responsibility for the Firm and materially participates in the conduct of its affairs,

including the development and approval of the collection practices described in

this Complaint. Winter is therefore a "related person" under the CFPA. 12 U.S.C.

§ 5481(25)(C)(i)-(ii). Because Winter is a "related person," he is deemed a

"covered person" under the CFPA. 12 U.S.C. § 5481(25).

11.     Hanna, Cooling, and Winter are intimately familiar with and direct

the Firm's operations, including its debt-collection litigation processes. Each

knew of and approved all of the practices described in this Complaint.

## Facts

12.     Since January 1, 2009, Defendants have collected or attempted to

collect debts for credit-card issuers such as JP Morgan Chase, Bank of America,

Capital One, and Discover, and debt buyers such as Portfolio Recovery

Associates and Midland Funding, LLC. The alleged debts were incurred by

consumers primarily for personal, family, or household purposes.

13.     To collect these debts, the Firm frequently turns to litigation. In

Georgia alone, the Firm sued about 78,000 consumers in 2009; about 84,000 in

2010; about 71,000 in 2011; about 57,000 in 2012; and about 60,000 in 2013. In sum,

the Firm filed more than 350,000 collection suits from 2009 through 2013 (the "Georgia Collection Suits").

14.     The Firm's non-attorney support staff has far outnumbered its attorneys. From 2009 through 2013, Defendants employed, at any given time, hundreds of non-attorney staff but only between 8 and 16 attorneys.

15.     In 2009 and 2010, the Firm directed one attorney to sign about 85% of the Georgia Collection Suits—about 138,000 lawsuits. Over two years, this single attorney signed an average of about 1,300 collection suits *a week*.

16.     For the Georgia Collection Suits, the Firm:

a.     delegated to non-attorney support staff the responsibility for determining whether consumers' accounts were "suit worthy";

b.     directed its attorneys to rely on an automated system and support-staff research to determine whether consumers had sought relief in bankruptcy or whether their debts were barred by limitations;

c.     directed its attorneys to rely on an automated system and support-staff research to determine legally significant facts such as each consumer's date of initial contract and the date the consumer last made a payment;

      d.      delegated to non-attorney support staff the responsibility for determining the alleged principal owed, alleged interest owed, and alleged attorneys' fees owed; and

      e.      delegated to non-attorney support staff the responsibility for drafting complaints on a mass scale for placement into mail buckets forwarded to attorneys.

17.     The Firm's Georgia Collection Suits bore the names and signatures (or, in some cases, purported signatures) of attorneys, despite those attorneys not being meaningfully involved in the decision to initiate the lawsuits or in the preparation of the pleadings.

18.     The Firm's attorneys did not exercise independent professional judgment in determining whether to file the Georgia Collection Suits or what remedies to seek. The Firm's attorneys gave only cursory review to those suits, checking the pleadings prepared by non-attorney support staff for grammar and spelling errors. The Firm's attorneys were expected to spend no more than one minute reviewing and signing the pleadings prepared by support staff.

19.     The Firm filed the Georgia Collection Suits on a mass scale against consumers, some of whom may not have owed the alleged debts.

20.     The Firm filed most of the Georgia Collection Suits against consumers on behalf of debt buyers. Those debt buyers often could not support their collection activities with basic documents, such as the original contracts underlying the alleged debts or the chain of title evidencing that the debt buyer had standing to sue the consumer. Defendants filed the Georgia Collection Suits without investigating or verifying support for the suits, including whether the facts alleged were true.

21.     In most of the Georgia Collection Suits, consumers either failed to appear, which resulted in a default judgment, or agreed to settle.

22.     When consumers responded to the Georgia Collection Suits, the Firm's attorneys routinely dismissed the cases. Indeed, since 2009, the Firm's attorneys have voluntarily dismissed more than 40,000 of the Georgia Collection Suits after they had already been served—a rate of more than 155 *a week*. Consumers who retained attorneys were almost four times more likely to have their cases dismissed.

23.     The Firm routinely obtained and used affidavits in the Georgia Collection Suits in which the affiants represented that they had personal knowledge of the validity and ownership of debts. Defendants knew or should

have known that many of these affidavits were executed by persons who lacked personal knowledge of the facts.

24.    For affidavits received from its debt-buyer clients, the Firm's attorneys did not determine whether any underlying documentation for the debt was available, nor did they review the contracts governing the sale of accounts to determine whether those contracts disclaimed any warranties regarding the accuracy or validity of the debts.

25.    Defendants acted recklessly or knowingly.

## Violations of Law

26.    This Complaint challenges two categories of Defendants' conduct in the Georgia Collection Suits: (1) their lack of meaningful attorney involvement in preparing and filing complaints; and (2) their use of affidavits.

## Count I
## Lack of Meaningful Attorney Involvement, in Violation of the FDCPA

27.    The Bureau incorporates the allegations of paragraphs 1-25 of this Complaint.

28.    As described above, the Georgia Collection Suits may have featured the signatures of attorneys, but they were prepared and filed without meaningful attorney involvement.

29.     Defendants thus falsely represented to consumers that the Georgia Collection Suits were from attorneys when, in fact, attorneys were not meaningfully involved in preparing or filing the suits.

30.     Defendants' acts and practices constitute violations of sections 807(3) and 807(10) of the FDCPA. 15 U.S.C. § 1692e(3), (10).

## Count II
## Lack of Meaningful Attorney Involvement, in Violation of the CFPA

31.     The Bureau incorporates the allegations of paragraphs 1-25 of this Complaint.

32.     Defendants' FDCPA violations, described in Count I, constitute violations of section 1036 of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

33.     As described above, the complaints filed in the Georgia Collection Suits represented, directly or indirectly, expressly or by implication, that attorneys were meaningfully involved in preparing and filing the complaints.

34.     In fact, the complaints filed in the Georgia Collection Suits were prepared and filed without meaningful attorney involvement.

35.     Defendants' representations as set forth in paragraph 33 were therefore false or misleading and constituted deceptive acts and practices, in

violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## Count III
## Use of Affidavits in Violation of the FDCPA

36.     The Bureau incorporates the allegations of paragraphs 1-25 of this Complaint.

37.     As described above, in numerous instances in the Georgia Collection Suits, Defendants used affidavits in which the affiants represented that they had personal knowledge of the validity and ownership of debts. Defendants knew or should have known that many of these affidavits were executed by persons who lacked personal knowledge of the facts contained in them.

38.     Defendants' use of such affidavits falsely represented to consumers the character, amount, or legal status of debts.

39.     Defendants' use of such affidavits constituted false representations or deceptive means to collect or attempt to collect debts.

40.     Defendants' use of such affidavits was an unfair or unconscionable means used to collect or attempt to collect debts.

41.     Defendants' acts and practices constitute violations of sections 807(2)(A), 807(10), and 808 of the FDCPA. 15 U.S.C. §§ 1692e(2)(A), (10), 1692f.

**Count IV**
**Use of Affidavits in Violation of the CFPA**

42.     The Bureau incorporates the allegations of paragraphs 1-25 of this Complaint.

43.     Defendants' FDCPA violations, described in Count III, constitute violations of section 1036 of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

44.     In numerous instances in the Georgia Collection Suits, Defendants used affidavits in which the affiants represented that they had personal knowledge of the validity and ownership of debts. By using these affidavits, Defendants represented, directly or indirectly, expressly or by implication, that those affiants had personal knowledge of the validity and ownership of the debts. In numerous instances in which they submitted such affidavits, Defendants knew or should have known that the affiants in fact did not have such personal knowledge.

45.     Defendants' representations as set forth in paragraph 44 of this Complaint were false or misleading and constituted deceptive acts and practices, in violation of sections 1031(a) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

**Demand for Relief**

The Bureau requests that the Court:

    a.      permanently enjoin Defendants from committing future violations of the FDCPA and CFPA;

    b.      award damages or other monetary relief against Defendants;

    c.      order Defendants to pay restitution to consumers harmed by their unlawful conduct;

    d.      order disgorgement of ill-gotten revenues against Defendants;

    e.      impose civil money penalties against Defendants;

    f.      order Defendants to pay the Bureau's costs incurred in connection with prosecuting this action; and

    g.      award additional relief as the Court may determine to be just and proper.

Respectfully Submitted,

ANTHONY ALEXIS
*Acting Enforcement Director*

JEFFREY PAUL EHRLICH
*Deputy Enforcement Director*

JOHN C. WELLS
*Assistant Litigation Deputy*

s/Lawrence D. Brown
LAWRENCE D. BROWN (TX Bar #24040586)
THOMAS G. WARD (IL Bar #6291011)
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Brown): 202-435-7116
Telephone (Ward): 312-610-8966
Facsimile: 202-435-7722
e-mail: lawrence.brown@cfpb.gov
e-mail: thomas.ward@cfpb.gov


SALLY QUILLIAN YATES
*United States Attorney*

LENA AMANTI
*Assistant United States Attorney*
Georgia Bar No. 666825
600 Richard B. Russell Federal Bldg.
75 Spring Street, SW
Atlanta, Georgia 30303
Telephone: 404-581-6225
Facsimile: 404-581-6163
e-mail: lena.amanti@usdoj.gov