**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>FREDERICK J. HANNA & ASSOCIATES, P.C., et al.,<br><br>Defendants. | ) | Civil Action No. 1:14-cv-02211-AT |

**DEFENDANTS' MOTION TO DISMISS AND**
**SUPPORTING MEMORANDUM OF LAW**

## I. INTRODUCTION

Defendants, a law firm and three of its lawyers, are all subject to extensive state bar and court regulation over the manner in which they practice law, especially their conduct during litigation. Historically, the regulation of the practice of law has been left exclusively to the states. For lawyers litigating in Georgia state courts, like the Defendants, the state ethics rules, court procedural rules, the Georgia Bar, the Supreme Court of Georgia, and the courts' inherent power govern litigation practice.

Nevertheless, the Consumer Financial Protection Bureau (the "Bureau") attempts to enforce federal consumer protection statutes against Defendants based

on their alleged conduct in litigating bona fide claims for their clients in Georgia courts. The Bureau alleges Defendants violated the Fair Debt Collection Practices Act ("FDCPA") and Consumer Financial Protection Act ("CFPA") by the manner in which they prepared and filed lawsuits and used client affidavits in Georgia state court proceedings. The Bureau's claims contravene the centuries-old principle of deference to states in regulating the practice of law, as well as Congress's express intent *not* to regulate how lawyers litigate cases in state courts through the FDCPA and the CFPA. This unprecedented overreach results in several, incurable defects in the Bureau's claims.

All the Bureau's CFPA claims must be dismissed pursuant to the CFPA's provision expressly precluding the Bureau from bringing CFPA claims against an attorney practicing law. The language of this provision dictates that filing lawsuits in a state court and including supporting client affidavits in those lawsuits is exactly the type of activity Congress intended to exclude from the Bureau's enforcement authority.

The Bureau's complaint should also be dismissed because it cannot state a claim under the FDCPA or the CFPA as a matter of law. The Bureau's claims are based on two theories: (1) Defendants deceived consumers by filing collection complaints that were not prepared with enough "meaningful" attorney

involvement; and (2) Defendants submitted client affidavits in collection lawsuits that allegedly misrepresented that the affiant had personal knowledge of the facts in the affidavits, and that Defendants knew or should have known about these misrepresentations.

As to the first theory, neither the FDCPA nor CFPA imposes any standard for the level of attorney involvement required in preparing and filing a complaint. The Bureau's claims presuppose that utilizing computer software and legal assistants to assist a modern law practice is inherently deceitful, yet the FDCPA and CFPA do not restrict such practices. Thus, the Bureau alleges conduct that does not violate either statute. Moreover, Congress did not intend for either the FDCPA or the CFPA to govern basic litigation practices of lawyers governed by state law. The Bureau's second theory also intrudes into Georgia's authority to regulate litigation practices in Georgia courts, and the allegations underlying this theory and fail to identify any affidavits containing misrepresentations or an explanation of when, how, or why Defendants knew or should have known this.

The Bureau's claims also should be dismissed because they infringe on Defendants' First Amendment and Equal Protection rights. Finally, much of the conduct alleged, if actionable at all, is time-barred. For all these reasons, the Bureau's complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

## II. STATEMENT OF ALLEGATIONS

Frederick J. Hanna & Associates, P.C. ("FJ Hanna" or the "Firm") is a law firm that represents clients seeking to collect delinquent consumer debts. Compl. ¶¶ 1, 7. When a person defaults on a debt owed to FJ Hanna's client, a Firm lawyer files suit on behalf of the client to collect the amount owed. *Id*. ¶ 12-13. According to the Bureau's complaint ("Complaint"), two aspects of the way in which the Firm litigated such lawsuits from 2009 through 2013 violated federal law. *Id*. ¶¶ 8-10, 13.

First, the Bureau contends that FJ Hanna's lawyers were not involved in preparing the lawsuit complaints in a "meaningful" way. *Id*. ¶¶ 17-18; *see also id.* ¶ 26 (Defendants' improper conduct is "their lack of meaningful attorney involvement in preparing and filing complaints"). Specifically, the Bureau alleges FJ Hanna attorneys relied on automated computer programs to help determine whether a collection suit should or should *not* be pursued for a variety of reasons: whether potential defendants were in bankruptcy; whether their debts were barred by the statute of limitations; the date of the defaulted contract; and the date of the last payment under the contract. *Id*. ¶ 16(a)-(c). The Bureau does not allege that these automated computer systems failed to identify such facts, or caused the Firm

to file suits that were factually or legally unsupportable. *See generally id*.[1]

The Bureau does not contend the Firm's attorneys relied on these automated systems alone. The Complaint alleges that FJ Hanna attorneys also relied on non-attorney support staff (paralegals) to assist in performing these same factual investigations. *Id*. ¶ 16(a)-(c). The Bureau also alleges that the Firm's attorneys delegated to non-attorney staff the tasks of investigating the amounts owed under the contracts, and preparing draft complaints for those accounts deemed appropriate for a lawsuit, which drafts were then reviewed by attorneys prior to filing. *Id*. ¶¶ 16(d)-(e), 18. The Bureau does not allege the Firm's paralegals performed these tasks inadequately or that the use of paralegals ever resulted in a factually or legally unsupportable suit. *See generally id*.

Based on these allegations, and that FJ Hanna filed a large number of collection suits, the Bureau alleges Defendants violated the FDCPA and the CFPA by misrepresenting to defendants in those collection suits that the complaints were filed by attorneys, when the complaints lacked "meaningful attorney involvement." *Id*. ¶¶ 26-35 (Counts I and II).

[1] The absence of such an allegation is particularly telling because the Bureau filed its Complaint after a year-long investigation of FJ Hanna, where the Firm provided substantial documents and the testimony of five Firm employees, including two of its partners.

The Bureau next contends that FJ Hanna attorneys "routinely" attached client affidavits to filed suits representing that the affiant had personal knowledge of the validity and ownership of the debt, and the "Defendants knew or should have known that many of these affidavits were executed by persons who lacked personal knowledge of the facts." *Id*. ¶ 26; *accord id.* ¶ 26 (the second category of Defendants' improper conduct is "their use of affidavits"). In support of this conclusion, the Bureau alleges only that the Firm's clients sometimes could not provide documentation of the validity and ownership of the debt when the suit was filed, and the Firm did not independently investigate or verify the facts certified in the affidavits. *Id*. ¶¶ 20, 23-24. The Bureau does not cite any affidavit made without personal knowledge, let alone any instance where a Firm attorney allegedly knew of such a fact. *See generally id*. Nevertheless, the Bureau contends filing the affidavits constituted a misrepresentation and unfair and unconscionable method of collecting a debt in violation of the FDCPA, and deceptive conduct in violation of the CFPA. *Id.* ¶¶ 36-45 (Counts III and IV).

Importantly, the Complaint lacks any allegation that a lawsuit was not well-founded when filed. Remarkably, the closest thing to an allegation that the Firm filed a lawsuit it should not have is the Bureau's speculation that "[t]he Firm filed the Georgia Collection Suits on a mass scale against consumers, *some of whom*

*may not have owed the alleged debts.*” *Id*. ¶ 19 (emphasis added); *see also id.* ¶ 3 (alleging conclusorily that the Firm files lawsuits against consumers who “may” not owe the debt or whose debt amount “may” be different than the amount claimed).

## III. APPLICABLE LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), “a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept mere “threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.” *Iqbal*, 556 U.S. at 678; *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a plaintiff has an “obligation to provide the ‘grounds’ of his ‘entitle[ment] to relief’ [which] requires more than labels and conclusions, and the formulaic recitation of the elements of a cause of action will not do.”). The court should “eliminate [the] allegations in the complaint that are merely legal conclusions,” and consider only well-pleaded factual allegations in determining whether the plaintiff has stated a plausible claim. *Am. Dental Ass’n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

## IV. ARGUMENT[2]

### A. The Practice Of Law Exclusion Bars The CFPA Claims.

The Bureau alleges that lawsuits filed by FJ Hanna violated Section 1036(a)(1)(B) of the CFPA, which prohibits a person offering or providing consumer financial products or services from engaging in any deceptive act or practice. 12 U.S.C. § 5536(a)(1)(B). But section 1027(e) of the CFPA (the "Practice of Law Exclusion") prohibits the Bureau from exercising enforcement authority over "activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law." 12 U.S.C. § 5517(e)(1). For this reason alone, the CFPA claims all must be dismissed.

The Practice of Law Exclusion reaffirms the principle that the regulation of the practice of law is and should be left to the states. "It is undisputed that the regulation of the practice of law is traditionally the province of the states." *Am. Bar Ass'n v. F.T.C.*, 430 F.3d 457, 471 (D.C. Cir. 2005).[3] Representative John Conyers, Jr., Chairman of the House Judiciary Committee (which was "instrumentally

---

[2] Pursuant to the Court's September 8, 2014 Order, attached hereto as "Exhibit A" is Defendants' separate argument outline.

[3] *See also id.* at 469 (the profession of law has been "never before regulated by 'federal functional regulators'"); *Am. Bar Ass'n v. F.T.C.*, 671 F. Supp. 2d 64, 74 (D.D.C. 2009), *vacated as moot by* 636 F.3d 641 (D.C. Cir. 2010), ("[T]he regulation of the legal profession has been left to the prerogative of the states.").

involved in shaping" the Practice of Law Exclusion in the CFPA), articulated Congress's intent to maintain the role of states as the regulators of the practice of law without interference from the Bureau. 156 Cong. Rec. E1347, 1348-49 (July 15, 2010) (Rep. Conyers). Representative Conyers noted that the activities of lawyers as "'officers of the court' are regulated by the States, through government bodies overseen by the State's highest court, with specialized expertise in the sometimes complex duties imposed by the code of legal ethics." *Id.* at E1348. He further explained that the furnishing of consumer financial products or services that the Bureau is authorized to regulate is "distinguishable from the practice of law." *Id.* at E1348. Accordingly, due to concerns that the Bureau's authority would be interpreted to overlap with the regulatory authority of states, and to avoid "undermin[ing] the authority of the State supreme courts to effectively oversee and discipline lawyers," the Practice of Law Exclusion was explicitly crafted "to avoid any possible overlap between the Bureau's authority and the practice of law." *Id.* at E1348-49.

The Bureau alleges Defendants violated the CFPA by filing pleadings and affidavits in Georgia state courts. This is, without question, the practice of law. In *State ex rel. Doyle v. Frederick J. Hanna & Associates, P.C.*, the Georgia Supreme Court specifically held that FJ Hanna's actions on behalf of its creditor clients

constitute the practice of law under the regulatory purview of the Georgia Supreme Court. 287 Ga. 289, 291-92(2010).[4] The Bureau's CFPA's claims of "deceptive acts or practices" based on Defendants' litigation practices clearly involve the practice of law as defined by the state of Georgia, and are therefore barred by the plain language of the Practice of Law Exclusion.

Subsection 1027(e)(2) provides two "rule[s] of construction" reflecting Congress's intended meaning and purpose of the Practice of Law Exclusion, which are well documented.[5] As Representative Conyers explained, while the drafters of the Practice of Law Exclusion were "determined to avoid any possible overlap between the Bureau's authority and the practice of law," they also "recognized that attorneys can be involved in activities outside the practice of law, and might even hold out their law license as a sort of badge of trustworthiness." 156 Cong. Rec. E1347, 1349. Subsection 1027(e)(2) therefore was included to "make clear that the

[4] In addressing the operations of FJ Hanna, the Georgia Supreme Court specifically held that the manner in which "staffing, training, equipment or support personnel . . . is used and managed in the representation of clients is part of the actual practice of law." *Id.* (internal citations and quotations omitted).

[5] Subsection 1027(e)(2) provides that that the Practice of Law Exclusion is not construed to cover a lawyer's offering or provision of a consumer financial product or service that is not "part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship," 12 U.S.C. § 5517(e)(2)(A), or "otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service," *id.* § 5517(e)(2)(B).

[Bureau] is not being given authority to regulate the practice of law, which is regulated by the State or States in which the attorney in question is licensed to practice," but that the Practice of Law Exclusion does not "preclude the new Bureau from regulating other conduct engaged in by individuals who happen to be attorneys or to be acting under their direction, if the conduct is not part of the practice of law or incidental to the practice of law." *Id.*

Congress's concern about lawyers acting outside of the "practice of law" arose from well-publicized instances of lawyers offering financial services to consumers under the guise of providing legal services when no, or practically no, legal services were actually provided. The most prominent example was "Attorney Model" debt settlement firms that were ultimately sued by various state attorneys general.[6] In fact, last year the Bureau filed suit against one of these debt settlement companies, Morgan Drexen, Inc.. *Consumer Fin. Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Aug. 20, 2013). The Bureau alleged Morgan Drexen attempted to circumvent FTC regulations banning debt settlement

[6] *See, e.g.*, Complaint, *North Carolina v. The Consumer Law Group, P.A.*, No. 10CV016777 (N.C. Super. Ct., Wake Cnty. Oct. 1, 2010); Complaint, *People v. Legal Helpers Debt Resolution, LLC*, No. 2011CH00286 (Ill. Cir. Ct. 7th. Cir. Mar. 2, 2011); Complaint, *Colorado v. The Johnson Law Group, PLLC*, No. 2011CV2749 (Colo. Dist. Ct. April 13, 2011); Complaint, *West Virginia v. Morgan Drexen, Inc.*, No. 11-C-829 (W. Va. Cir. Ct., Kanawha Cnty. May 20, 2011). Copies of these complaints are attached hereto as Exhibit A.

companies from obtaining advanced fees by disguising them as fees for legal services that were not actually performed, and that although Morgan Drexen sold legal services from attorneys associated with Morgan Drexen, most of those services were not actually performed by attorneys. *Id.* ¶¶ 13-14, 42. The court denied Morgan Drexen's motion to dismiss the CFPA claims based on the Practice of Law Exclusion because the allegations in the complaint "suggest that Morgan Drexen's services are not offered as part of, or incidental to, the practice of law." Order at 18, No. 8:13-cv-01267 (C.D. Cal. Jan. 1, 2014).

Unlike the claims against Morgan Drexen, the Bureau's claims in this case are based solely on conduct—filing lawsuits—that is unquestionably "the practice of law" under any possible meaning of that phrase. Any argument by the Bureau that the rules of construction in Subsection 1027(e)(2) redefine "the practice of law" to exclude the acts of preparing and filing complaints on behalf of clients and attaching affidavits to those complaints would fail for several reasons.

First, by their plain language, 1027(e)(2)(A) and (B) are not implicated by standard litigation practices such as preparing and filing complaints. Filing complaints on behalf of clients is certainly "part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship." 12 U.S.C. § 5517(e)(2)(A). Moreover, preparing and filing collection lawsuits is a

bona fide legal service provided to a creditor client, not a "consumer financial product or service . . . offered or provided by [an] attorney with respect to [a] consumer." *Id.* § 5517(e)(2)(B).

Next, allowing the Bureau to regulate how FJ Hanna prepares and litigates lawsuits, even suits that have some connection to consumer financial services, would defeat the central purpose of the Practice of Law Exclusion: to avoid interfering with states' regulation of the practice of law. 156 Cong. Rec. E1347, 1348-49; *see also Am. Bar Ass'n*, 430 F.3d at 471. As Representative Conyers explained, the rules of construction in Subsection 1027(e)(2) provide "indicia" for determining whether an activity constitutes the practice of law. 156 Cong. Rec. E1347, 1349. Congress did not intend for the rules of construction to identify conduct that, while obviously constituting the practice of law subject to the regulation of states, nevertheless may be regulated by the Bureau. Thus, if the Bureau could invoke § 1027(e)(2) to regulate the litigation conduct of lawyers, it would not only undermine the purpose of the Practice of Law Exclusion, it would render it meaningless.

Additionally, it is a fundamental canon of construction that "if Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so 'unmistakably clear in the

language of the statute.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989); *Am. Bar Ass'n*, 430 F.3d at 471 ("Federal law may not be interpreted to reach into areas of State sovereignty unless the language of the federal law compels the intrusion."). Because the regulation of attorneys' litigation practices is traditionally left to the states, if subsection 1027(e)(2) were intended to regulate litigation practice notwithstanding the general prohibition against regulating the practice of law in 1027(e)(1), that intent must be "unmistakably clear." *See Am. Bar Ass'n*, 430 F.3d at 472 (invalidating FTC rule applying provisions of the Gramm-Leach-Bliley Act to the practice of law because Congress did not make its intent to do so "unmistakably clear"). Here, there is nothing to suggest Congress "unmistakably" intended to authorize the Bureau to regulate the practice of law; rather, it is clear that Congress did *not* intend to give the Bureau such power. Accordingly, the Bureau lacks the authority to bring the claims in Counts II and IV alleging deceptive acts or practices under Section 1036(a)(1)(B) of the CFPA because those claims are explicitly barred by the Practice of Law Exclusion.

### B. The Complaint Fails To Allege Violations Of The FDCPA And The CFPA.

Counts I and II allege Defendants falsely represented that attorneys were "meaningfully involved in preparing or filing" complaints, in violation of the FDCPA, 15 U.S.C. § 1692e(3), (10), and the CFPA, 12 U.S.C. § 5536(a)(1)(A),

(B). Compl. ¶¶ 29, 33. These claims are based on a novel theory of "deceptive" conduct not contained in either statute, nor recognized by any circuit court of appeals. More importantly, the claims are an unprecedented exertion of federal authority over the most core elements of the practice of law, which Congress never intended.

Counts III and IV allege Defendants filed client affidavits when Defendants knew or should have known the affiants lacked personal knowledge of attested facts, constituting deceptive and unfair practices under the FDCPA, 15 U.S.C. §§ 1692e(2)(A), (10), 1692f, and deceptive practices under the CFPA, 12 U.S.C. § 5536(a)(1)(A), (B). Compl. ¶¶ 36-45. But the Complaint does not identify a single affidavit that was made without personal knowledge, or one that Defendants knew lacked personal knowledge. Moreover, the Complaint contains no factual matter from which the Court can reasonably infer the affidavits contained any false representations. The Bureau's conclusory allegations are not enough, especially when lawyers may rely on affidavits from their clients. Additionally, these claims intrude into Georgia's authority to regulate litigation in its own courts.

### 1. The Allegations Of A Lack Of Meaningful Attorney Involvement Do Not State A Claim Under The FDCPA.

#### *a. History of Meaningful Attorney Involvement Claims.*

Neither the text of the FDCPA nor its legislative history references the level

of involvement an attorney must have in preparing and filing a complaint to collect a debt. *See* 15 U.S.C. §§ 1692-1692p. The Bureau, nevertheless, alleges Defendants violated § 1692e(3) and (10) of the FDCPA by misrepresenting that complaints were from attorneys because the complaints lacked "meaningful attorney involvement." Section 1692e(3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney," in connection with collecting a debt. *Id.* § 1692e(3). Section 1692e(10) prohibits using "false representations or deceptive means to collect a debt." *Id.* § 1692e(10).

The concept of "meaningful attorney involvement" arose in the context of collection letters that purported to be from a lawyer, but in reality were mass-produced, form letters sent to consumers for whom an attorney never reviewed their file, nor made any independent judgment as to whether a collection letter should be sent. *See, e.g., Avila v. Rubin*, 84 F.3d 222, 228 (7th Cir. 1996). Courts have uniformly rationalized a "meaningful involvement" requirement for attorney collection letters on the basis that "[a] letter from a lawyer implies that the lawyer has become involved in the debt collection process, and the fear of a lawsuit is likely to intimidate most consumers." *Gonzalez v. Kay*, 577 F.3d 600, 604 (5th Cir. 2009). As the Seventh Circuit explained:

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has gone up. . . . A debt collection letter on an attorney's letterhead conveys authority. Consumers are inclined to more quickly react to an attorney's threat than to one coming from a debt collection agency. It is reasonable to believe that a dunning letter from an attorney threatening legal action will be more effective in collecting a debt than a letter from a collection agency.

*Avila*, 84 F.3d at 229.[7]

This rationale simply does not apply to complaints actually filed with a court. Once a complaint is filed, it is apparent to even the most unsophisticated consumer that the stakes have been raised, and he is now involved in a judicial proceeding. When FJ Hanna attorneys filed the lawsuits at issue, there was no risk that the Firm's clients were simply exploiting the attorneys' titles to make empty threats of litigation. Nor does the Bureau allege such deception. Indeed, the filing of a lawsuit *truthfully* informs consumers that they are named as defendants in a

---

[7] *Accord Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1003 (3d Cir. 2011) (a collection letter from an attorney is misleading if the debtor "may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action"); *Irwin v. Mascott*, 112 F. Supp. 2d 937, 948 (N.D. Cal. 2000) (meaningful attorney involvement in a collection letter is required "because a consumer fears more an attorney's improper threat of legal action than that of a debt collection employee who is not an attorney"); *Dalton v. FMA Enters., Inc.*, 953 F. Supp. 1525, 1532 (M.D. Fla. 1997) (the meaningful attorney involvement standard arises because a consumer receiving a letter from an attorney is "inclined to more quickly react to an attorney's threat"); *see also Pollard v. Law Office of Mandy L. Spaulding*, 967 F. Supp. 2d 470, 478 (D. Mass. 2013) (same); *Martinez v. Johnson*, No. 2:11CV157, 2013 WL 1031363, at *9 (D. Utah Mar. 14, 2013) (same); *In re Cheaves*, 439 B.R. 220, 225 (M.D. Fla. Bankr. 2010) (same).

lawsuit.

This crucial difference between the impact of collection letters versus actual lawsuits underlies two key reasons why the Bureau's "meaningful attorney involvement" claims fail as a matter of law. First, there is no standard for "meaningful attorney involvement" with regard to filed complaints. Because the same kind of misrepresentation that occurs with a collection *letter* seemingly from attorney does not occur with a *complaint* filed in court, only a few trial courts, and no courts of appeal, have applied the novel theory the Bureau advances here. Defendants cannot be in breach of a standard that does not exist. Second, attributing to the FDCPA any rule governing how an attorney must prepare and file a state court lawsuit necessarily interferes with states' exclusive authority to regulate the litigation practices of attorneys, a dramatic shift that Congress never intended.

***b. There Is No Meaningful Attorney Involvement Standard For Complaints.***

There is no applicable standard under the FDCPA for how an attorney must prepare and file a complaint in a court. Despite the fact that § 1692e(3) has been in place since Congress passed the FDCPA in 1977, Pub. L. No. 95-109, 91 Stat. 874 (1977), and that the FDCPA's exemption for attorneys practicing law was repealed in 1986, Pub. L. 99-361, 100 Stat. 768 (1986), few plaintiffs have challenged a

complaint as lacking meaningful attorney involvement. Defendants have not found any federal court of appeals decision addressing this theory, and from the small handful of district court decisions that have addressed such claims, nothing remotely close to a standard has arisen. *Compare Donatelli v. Warmbrodt*, No. 08-1111, 2011 WL 2580442, at *5 (W.D. Pa. June 28, 2011) (rejecting meaningful involvement claim where attorney's role involved reviewing boilerplate complaint and the attached supporting documentation before signing), *with Berg v. Blatt, Hasenmiller, Leibsker & Moore LLC*, No. 07C4887, 2009 WL 901011, at *12 (N.D. Ill. Mar. 31, 2009) (finding factual dispute precluding summary judgment as to meaningful attorney involvement where attorney reviewed complaint prepared by a legal clerk for suit worthiness, but complaint contained different amounts owed than the attached affidavit). As stated by one of the only district courts to address a meaningful attorney involvement claim concerning a complaint, the "limited holdings" related to mass mailing of collection letters do not provide a "general standard under the FDCPA for adequate attorney involvement in debt collection actions." *Taylor v. Quall*, 471 F. Supp. 2d 1053, 1061 (C.D. Cal. 2007). More importantly, although "meaningful attorney involvement" is a judge-made requirement, no court in the Eleventh Circuit—District or Court of Appeals—has recognized a meaningful attorney involvement cause of action concerning the

filing of a complaint. The legal theory on which the Bureau's claim is predicated simply does not exist as a matter of law.

***c. Enforcing A Non-existent Standard Would Render The FDCPA Void For Vagueness.***

Ascribing some standard for attorney involvement in preparing and filing complaints to the FDCPA where no such standard is perceptible from the statute or case law would result in the FDCPA being unconstitutionally vague as applied. This result compels an interpretation that the FDCPA does not regulate the preparation and filing of complaints because "every reasonable construction must be resorted to in order to save a statute from unconstitutionality." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2593 (2012).

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012). Accordingly, the Fifth Amendment's Due Process Clause protects against the enforcement of a federal law that is "impermissibly vague." *Id.* If a law "threatens to inhibit the exercise of constitutionally protected rights," such as the First Amendment right to petition courts for redress, "a more stringent vagueness test should apply." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *see also Jones v. Clinton*, 72 F.3d 1354, 1365 (8th Cir. 1996) *aff'd*, 520 U.S. 681

(1997) (access to the courts is a "fundamental constitutional right")

While courts have required minimum attorney involvement in a collection letter to avoid misrepresenting that the letter was from an attorney, there is no standard for the minimum level of attorney involvement in a complaint filed with a court, and no standard can be logically crafted because there is no risk that a complaint filed with a court would deceptively exaggerate the seriousness of the dispute.

Without such standards, the Bureau's enforcement of the FDCPA has "trapped" Defendants "by not providing fair warning" of what conduct is prohibited, and subject them to this arbitrary enforcement. *Village of Hoffman Estates*, 455 U.S. at 498. Importantly, the enforcement of a standardless rule governing litigation practice infringes upon the fundamental right of access to the courts, which is zealously protected. *See id.* at 499. For all of these reasons, the Bureau's claims should be dismissed.

***d. Congress Did Not Intend To Interfere with States' Regulation Of the Practice Of Law.***

The most obvious reason the "meaningful attorney involvement" requirement that courts have inferred in the context of collection letters does not apply to a complaint filed with a court is that an attorney's conduct during the litigation stage of a case is heavily regulated by state ethics and court procedural

rules. Congress did not intend for the FDCPA to interfere with states' autonomy to regulate lawyers engaged in litigation. Had Congress intended to regulate such core elements of the practice of law, it would have had to make its intentions abundantly clear. It has not, and accordingly, the Bureau's claims fail.

As set forth in Section IV.A, *supra*, and as expressly confirmed by the Georgia Supreme Court, Georgia law governs Defendants' preparation and filing of complaints in state court. By contrast, federal agencies have never regulated state court litigation procedures. *See Am. Bar. Ass'n*, 430 F.3d at 469. Thus, if Congress intended the FDCPA "to alter the usual constitutional balance between the States and the Federal Government," its intention to do so must be "unmistakably clear in the language of the statute." *Will*, 491 U.S. at 65.[8]

The FDCPA does not expressly regulate the substance or preparation of state-court pleadings by attorneys. In *Heintz v. Jenkins*, the Supreme Court held that the FDCPA applies to attorneys who "regularly engage in consumer-debt-collection activity, even when that activity consists of litigation." 514 U.S. 291, 299 (1995). *Heintz*, however, did not apply the FDCPA to the core practice of law.

---

[8] *See also Am. Bar. Assoc.*, 430 F.3d at 472 (the FTC's interpretation of a statute as applying to attorneys engaged in the practice of law, even affording it *Chevron* deference, was unreasonable because the statute's language failed to make it "unmistakably clear" that Congress intended to regulate the practice of law, which has always been regulated by the states).

As the Eighth Circuit observed, "*Heintz* answered the question whether the FDCPA applies to a lawyer who regularly collects consumer debts through litigation. But the circuit courts have struggled to define the extent to which a debt collection lawyer's representations to the consumer's attorney *or in court filings* during the course of debt collection litigation can violate §§ 1692d-f." *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818 (8th Cir. 2012) (emphasis added); *see also Bandy v. Midland Funding, LLC*, No. 12-491, 2013 WL 210730, at *6 n.6 (S.D. Ala. Jan 18, 2013) ("The Court is doubtful that the FDCPA applies to state court litigation."). In *Hemmingsen*, the court held a law firm's submission of a client affidavit and legal memorandum that were not supported by the record and did not persuade the judge in a state court collection action are simply not deceptive collection practices in violation of § 1692e. *Id.* at 819. In *O'Rourke v. Palisades Acquisition XVI, LLC*, the Seventh Circuit held the FDCPA does not prohibit court submissions that allegedly deceive the court. 635 F.3d 938, 944 (7th Cir. 2011).

Neither the Supreme Court nor the courts of appeal have found language in the FDCPA indicating Congress's intent to regulate the core elements of the practice of law, which no doubt include the level of involvement a lawyer should have in preparing and filing a complaint. Certainly it cannot be said the language

of the FDCPA makes it "unmistakably clear" that Congress intended to set a standard for the level of attorney involvement in preparing and filing a complaint in state court, which practices have been exclusively regulated by the states. The D.C. Circuit's conclusion in *American Bar Association* applies equally here:

> The states have regulated the practice of law throughout the history of the country; the federal government has not. . . . We simply conclude that it is not reasonable for an agency to decide that Congress has chosen such a course of action in language that is, even charitably viewed, at most ambiguous.

430 F.3d at 376.

#### 2. The Allegations Of A Lack Of Meaningful Attorney Involvement Do Not State A Claim For Deceptive Conduct Under the CFPA.

The Bureau also asserts that the alleged lack of meaningful attorney involvement in preparing and filing complaints constitutes deceptive conduct in violation of the CFPA, 12 U.S.C. § 5536(a)(1)(B). This claim should be dismissed as barred by the Practice of Law Exclusion, 12 U.S.C. § 5517(e)(1). This claim should also be dismissed on the ground that the allegations in the Complaint, even assuming their truth, do not constitute deceptive conduct under the CFPA.

The CFPA does not define "deceptive acts or practices." However, the Bureau has adopted the substantially same definition of deceptive acts or practices applied to the Federal Trade Commission Act ("FTC Act"): "(1) there was a

representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *F.T.C. v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003).

As described above, there is no federal "meaningful attorney involvement" standard for preparing and filing complaints in state court. Accordingly, Defendants could not have misrepresented that the standard was met, when no such standard exists. Moreover, no consumer reacting reasonably to a complaint filed by an FJ Hanna attorney could be misled with respect to whether his or her purported creditor had initiated a lawsuit to collect a debt. Even assuming the complaints filed by FJ Hanna somehow misrepresented the level of attorney involvement in their preparation, the same being specifically denied, such misrepresentations would have been immaterial because whether or not an attorney was meaningfully involved in preparing the complaint, the reality remained that the consumer had become the subject of a civil lawsuit filed by FJ Hanna on behalf of its client. The CFPA meaningful attorney involvement claim should be dismissed for this independent reason.

In addition, the CFPA claim is susceptible to the same void for vagueness challenge in Section IV.B.1.c, *supra*.

### 3. The Allegations Regarding The Use Of Client Affidavits Fail To State A Claim Under The FDCPA.

Section 1692e(2)(A) of the FDCPA prohibits any false representation of the character, amount, or legal status of a debt in connection with collecting a debt. 15 U.S.C. § 1692e(2)(A). Section 1692e(10) prohibits using "false representations or deceptive means to collect a debt." *Id.* § 1692e(10). Section 1692f prohibits the use of unfair or unconscionable means to collect a debt. *Id.* § 1692f. The Bureau alleges Defendants violated these provisions by submitting client affidavits Defendants knew or should have known lacked personal knowledge.

***a. The Bureau Fails To Allege Misrepresentation and Deception With Requisite Specificity.***

The Bureau's allegations are insufficient in several respects. First, although these claims sound in fraud, i.e., alleging deception and knowing or reckless false representations, the Bureau has not satisfied the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

While the Eleventh Circuit has not yet ruled on whether Rule 9(b) applies to FDCPA allegations, several courts have held claims alleging the use of false representations or deceptive means to collect a debt are subject to Rule 9(b). *See Dickman v. Kimball, Tirey & St. John, LLP*, 982 F. Supp. 2d 1157, 1165-66 (S.D. Cal. 2013); *Kupferstein v. RCS Ctr. Corp.*, 03-CV-1497, 2004 WL 3090582, at *2 (E.D.N.Y. Aug. 11, 2004); *Knowles v. I.C. System, Inc.*, No. Civ-90-822E, 1991 WL 5182, at *2 (W.D.N.Y. Jan. 14, 1991). *But see Neild v. Wolpoff & Abramson*,

*L.L.P.*, 453 F. Supp. 2d 918, 924 (E.D. Va. 2006). The same justification for the heightened pleading standard compels its application here. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (averments of fraud must be pleaded with particularity to give adequate notice to defendants of the alleged misconduct, and to "protect[] defendants from harm to their goodwill and reputation."). When, as is the case here, the federal government brings accusations that even *imply* dishonesty, the need to protect a defendant's reputation is even more pronounced. *See F.T.C. v. Cantkier*, 767 F. Supp. 2d 147, 155 (D.D.C. 2011).

"Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). The Complaint plainly lacks this requisite specificity. It does not state which client supplied false affidavits, when the affidavits were used, or to which courts they were submitted. The Complaint does not even identify a single affidavit that was made without personal knowledge, let alone a specific affidavit Defendants knew lacked personal

knowledge. Nor does it identify a particular affidavit Defendants *should have known* lacked personal knowledge, or how or why Defendants should have known that. Rather, the Complaint only alleges in broad strokes that Defendants' use of such affidavits was "routine." Compl. ¶ 23. This does not satisfy Rule 9(b). *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311-12 (11th Cir. 2002) (finding detailed allegations of an alleged scheme to submit fraudulent claims failed to satisfy 9(b) where plaintiff failed to identify a single claim actually submitted pursuant to the scheme). The Bureau's FDCPA claims relating to client affidavits, therefore, should be dismissed.

***b. The Allegations Relating to Client Affidavits Fail To Satisfy the Plausibility Standard.***

The Bureau also fails to state an FDCPA claim relating to client affidavits under Rule 8(a)'s plausibility standard. *See Iqbal*, 556 U.S. at 678. The Complaint contains no factual material to support the Bureau's allegations that certain unidentified affidavits were made without personal knowledge, or that Defendants knew or should have known this. *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.").

In *Ness v. Gurstel Chargo, P.A.*, the court dismissed a complaint asserting §§ 1692d, 1692e, and 1692f claims against a law firm for procuring default judgments without proof of ownership of the debt and by submitting client

affidavits in support of default judgments falsely stating that the affiant had personal knowledge of the debts. 933 F. Supp. 2d 1156, 1164, 1169 (D. Minn. 2013). The court found the allegations of false affidavits did not state a claim because they lacked any facts that would permit a reasonable inference that the affiants lacked personal knowledge of the debts, like, for instance, that a lone affiant executed so many affidavits that personal knowledge was an impossibility. *Id.* at 1169-70.

Just like the plaintiffs in *Ness*, the Bureau fails to allege any fact from which the court could reasonably infer the affidavits submitted by FJ Hanna attorneys were made without personal knowledge, or that Defendants knew or should have known that. The Bureau's conclusory allegations are not enough.

***c. FJ Hanna Lawyers Are Entitled To Rely On Affidavits From Clients In Litigation.***

Additionally, FJ Hanna is entitled to rely on the "objectively reasonable representations" of its clients, under clear federal and state law. Numerous cases hold that a debt collector or collection law firm can rely on a creditor's representations regarding a consumer's account where the attorney has reason to believe the client is providing reliable information, such as a creditor's maintenance of systems and procedures designed to ensure accuracy of account information. *See, e.g., Trinity Gas Corp. v. City Bank & Trust Co. of Natchitoches,*

54 F. App'x 591, at *2 (5th Cir 2002) ("In drafting pleadings, an attorney is entitled to rely on his own personal knowledge as well as the objectively reasonable representations of his clients").[9]

The Bureau's Complaint contains *no allegations* as to why Defendants knew or should have known any affidavits contained alleged misrepresentations. Accordingly, the Firm's filing of lawsuits based upon client affidavits that Defendants had no reasonable basis to believe were false is not an FDCPA violation as a matter of law. *See, e.g., Davis v. NCO Portfolio Mgmt., Inc.*, 1:05 CV 734, 2006 WL 290491, at *3 (S.D. Ohio Feb. 7, 2006) ("filing a lawsuit

[9] *See also Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995) ("an attorney is entitled to rely on the objectively reasonable representations of the client"); *Spangler v. Conrad*, No. 08-234, 2010 WL 2389481, at *5 (E.D. Tenn. Jun. 9, 2010) ("A debt collection attorney should be allowed to confidently rely upon an affidavit of Sworn Account executed by his client that sets forth the total amount owed"); *Jenkins v. Centurion Capital Corp.*, 07 C 3838, 2009 WL 3414248, at *4 (N.D. Ill. Oct. 20, 2009) (holding debt collector could rely in good faith on client's representation that consumer had unpaid balance because client provided that information to the collector); *Gigli v. Palisades Collection, L.L.C.*, No. 3:CV-06-1428, 2008 WL 3853295, at *15 (M.D. Pa. Aug. 14, 2008); *United States v. Jansen*, 229 F. Supp. 2d 377, 380 (M.D. Pa. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 691 (1984)); *Johnson v. Verisign, Inc.*, Civ. A.01-765-A, 2002 WL 1887527, at *20 (E.D. Va. Aug. 15, 2002); *Simpson v. Putnam Cnty. Nat'l Bank of Carmel*, 112 F. Supp. 2d 284, 290 (S.D.N.Y. 2000) ("Rule 11 makes it even clearer that an attorney is entitled to rely on the objectively reasonable representations of the client. No longer are attorneys required to certify that their representations are 'well-grounded in fact', Fed. R. Civ. P. 11 (1983), amended 1993"); *In re Frankel*, 208 B.R. 321, 322 (Bankr. S.D.N.Y. 1995).

supported by the client's affidavit attesting to the existence and amount of a debt, is not a false representation about the debt, nor is it unfair or unconscionable").[10] For this reason, these FDCPA claims should be dismissed with prejudice.

#### 4. The Allegations Regarding The Use Of Client Affidavits Fail To State A Deceptive Practices Claim Under The CFPA.

In addition to being barred by the Practice of Law Exclusion, the Bureau's claim that the use of client affidavits constituted deceptive acts or practices in violation of the CFPA fails for the same reasons it fails under the FDCPA. First, the Bureau's allegations do not allege deception and misrepresentation with particularity required by Rule 9(b).[11]Second, the Bureau's unsupported allegations

---

[10] *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 235 (4th Cir. 2007) (an attorney's reliance on the affidavit of his client may be a defense against legally cognizable claims under the FDCPA); *see also Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 549 (1991) ("[q]uite often it is the client, not the attorney, who is better positioned to investigate the facts supporting a paper or pleading" and that "the firm could not be blamed for relying on the factual representations of its experienced corporate client").

[11] Many courts have held that claims of deceptive acts or practices under the FTC Act are subject to the heightened pleading standard of Rule 9(b). *See, e.g., F.T.C. v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853-54 (C.D. Cal. 2010) (finding "Rule 9(b) applies to claims for violations of the FTC Act," where the FTC alleged the defendants distributed false and unsubstantiated claims in promotional materials they "knew or should have known" were deceptive); *F.T.C. v. Ivy Capital, Inc.*, No. 2:11-CV-283, 2011 WL 2118626, at *3 (D. Nev. May 25, 2011) (applying 9(b) because FTC alleged defendants "collectively engaged in a unified course of fraudulent conduct"); *F.T.C. v. Wellness Support Network, Inc.*, No. C-10-04879,

of deceptive conduct do not even state a plausible CFPA claim for all the same reasons set forth in Section IV.B.3.b-c. Accordingly, the CFPA claim based on the client affidavits should be dismissed on these independent grounds.

### C. <u>The Bureau's Attempt To Enforce The FDCPA And CFPA In This Manner Contravenes The First Amendment and Defendants' Equal Protection Rights.</u>

The Bureau's attempt to punish Defendants pursuant to federal statutes for acts performed within the scope of their representation of clients before a court is an overt obstruction of the fundamental right to petition courts for resolution of legal disputes under the First Amendment. Because the Bureau's claims impose restrictions on this fundamental right not imposed on other kinds of litigants, they also violate Defendants' right to equal protection under the law.

#### 1. Violation of the First Amendment's Right To Petition Courts.

The First Amendment right to petition the government for redress of grievances is "one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K Const. v. NLRB*, 536 U.S. 516, 524 (2002) (quotation omitted). To protect this  right, the Supreme Court created an immunity that shields parties

---

2011 WL 1303419, at *1 (N.D. Cal. Apr. 4, 2011) (noting (9)(b) likely applies but finding allegations fail to satisfy even 8(a)); *Cantkier*, 767 F. Supp. 2d  at 155 (opining 9(b) likely applies because it serves important interest of protecting defendants' reputation against accusations by federal government).

from civil liability under federal statutes when the underlying conduct involves presenting matters to courts for decision, or activity associated with litigation. Although this immunity was first recognized in antitrust cases—commonly referred to as the "*Noerr-Pennington* doctrine"—courts recognize its application in other contexts as well, since it is axiomatic that no Congressional enactment can override the First Amendment. *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007).[12]

The Supreme Court has made it clear that liability can be predicated on petitioning activity only in the rarest of circumstances—where the activity meets the two-part test enunciated by the Court for the "sham litigation" exception to *Noerr-Pennington* immunity. It is the Bureau's burden to demonstrate the applicability of this exception, which requires evidence that Defendants had no realistic expectation of success on the merits, *and* that they filed lawsuits to further

[12] *See id.* ("The doctrine is, at bottom, founded upon a concern for the First Amendment right to petition and, therefore, has been applied to claims implicating that right."); *Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*, No. 12-60691, 2014 WL 988767, at *21-22 (S.D. Fla. Mar. 13, 2014) (noting that First Amendment litigation immunity applies broadly, and applying it to Fair Housing Act claims); *Estate of Jackson ex rel. Jackson-Platts v. Sandnes*, 995 F. Supp. 2d 1350, 1357 (M.D. Fla. Feb. 3, 2014) (applying First Amendment litigation immunity to § 1983 claims); *Atico Int'l USA, Inc. v. LUV N' Care, Ltd.*, No. 09-60397, 2009 WL 2589148, at *2 & n.2 (S.D. Fla. Aug. 19, 2009) (noting "[a] form of litigation immunity akin to the immunity provided by the *Noerr-Pennington* doctrine applies to non-antitrust cases" and collecting cases).

an illegal objective, rather than to obtain the relief ostensibly sought from the courts in which the cases were filed. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56-57, 60-61 (1993).

The Eighth Circuit, in *Hemmingsen*, applied this First Amendment protection to claims against a debt collection law firm accused of violating the FDCPA. 674 F.3d at 819-20. The court held that holding an attorney liable for asserting good faith factual and legal arguments in a pleading in support of a debt collection lawsuit that are ultimately rejected would be contrary to the First Amendment right to petition the government for redress of grievances. *Id.* It further explained: "[i]f judicial proceedings are to accurately resolve factual disputes, a lawyer 'must be permitted to call witnesses without fear of being sued if the witness is disbelieved and it is alleged that the lawyer knew or should have known that the witness' testimony was false.'" *Id.* at 819-20 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 439 (1976) (White, J., concurring)).

There is no question the Bureau's claims are predicated on conduct protected by the First Amendment. Each claim seeks to impose some requirement on Defendants that is directly related to the manner in which they pursue litigation on their clients' behalf. Furthermore, the standards of conduct embedded in these claims go well beyond the "sham litigation" exception. The Bureau does not allege

that the Firm's attorneys filed lawsuits with no realistic expectation of success on the merits. *See Professional Real Estate Investors*, 508 U.S. at 60. Neither does it allege that the Firm filed lawsuits to further an improper objective. *See id.* at 60-61.

First Amendment litigation immunity is especially necessary where a lawyer, as opposed to a party, is involved, because lawsuits against lawyers could create a profound chilling effect on parties' access to the court system. The Petitioning Clause of the First Amendment is designed to prevent this chilling effect by providing a wide range of latitude in which parties can bring grievances to court for decision. The Bureau's claims infringe on access to the court system by seeking to impose requirements on Defendants that go well beyond the requirements of avoiding "sham litigation." For this reason, the Court should dismiss the Bureau's claims with prejudice.

**2. Violation Of Equal Protection Rights.**

The Fifth Amendment confers a right to equal protection under federal law. *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954). Where a law treats individuals in a certain class different from others with regard to a fundamental right, strict scrutiny applies. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 670 (1966); *Fulani v. Krivanek*, 973 F.2d 1539, 1542 (11th Cir. 1992). The Bureau's claims infringe on the equal protection rights of FJ Hanna and its clients, by

imposing requirements on the bringing of debt collection lawsuits not applicable to other kinds of litigants, in the form of a mandated level of "meaningful attorney involvement" and the requirement that lawyers police their clients' execution of affidavits to ensure "personal knowledge." Because access to the courts is a fundamental right, the Bureau must show that the laws, as applied, satisfy strict scrutiny: "the law advances a compelling interest and is narrowly tailored to meet that interest." *Fulani*, 973 F.2d at 1542-43 (citing *Eu v. San Francisco Cnty. Democratic. Cent. Comm.*, 489 U.S. 214, 221 (1989)).

Strict scrutiny imposes an extremely difficult burden. *See Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 319 (1976) (Marshall, J. dissenting) ("If a statute is subject to strict scrutiny, the statute always, or nearly always is struck down."). Given the robust state regulatory regime already governing the practice of law in Georgia, and specifically the rules governing litigation practices, the Bureau cannot demonstrate a compelling interest in having the FDCPA and CFPA regulate these same areas. Nor can the Bureau show its vague and overly broad construction of the statutes is narrowly tailored. Accordingly, the court should dismiss the claims with prejudice.

### D. <u>The FDCPA Claims Are Subject To A One-Year Statute Of Limitations.</u>

Though the Bureau's FDCPA claims should be dismissed for the reasons set

forth above, many of these claims must be dismissed for the additional reason that they are time-barred. The Bureau's FDCPA claims are based on conduct from 2009 through 2013. Compl. ¶ 13. However, all claims under the FDCPA are subject to a one-year statute of limitations.

Section 1692k(d) of the FDCPA states: "An action to enforce *any liability created by this subchapter* may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (emphasis added). The "subchapter" referred to in this statute of limitations is Subchapter V, i.e., the FDCPA. Government enforcement actions are authorized by § 1692*l*, which does not mention any different limitations period, and thus the plain language of the FDCPA commands that the one-year limitations period applies to government enforcement actions because they are enforcing "liability created by" Subchapter V. *Id.* § 1692k(d). Furthermore, the CFPA specifically provides that when the Bureau brings an action to enforce an "enumerated consumer law," such as the FDCPA, the limitations period under that statute applies.12 U.S.C. § 5564(g)(2)(B). Accordingly, the Bureau's FDCPA claims based on conduct before July 14, 2013 should be dismissed as time-barred.

### E. **<u>The Bureau Lacks Authority To Bring CFPA Claims For Conduct That Occurred Prior To July 21, 2011.</u>**

The provisions of the CFPA under which the Bureau asserts its claims

became effective on July 21, 2011. Because Congress did not express its intention for the CFPA's substantive provisions to apply retroactively, the Bureau cannot bring any CFPA claims for conduct prior to July 21, 2011.

The CFPA provision under which the Bureau asserts its claims, 12 U.S.C. § 5536(a), became effective on the "designated transfer date." *See* CFPA § 1037, codified at 12 U.S.C. § 5531 notes ("This subtitle [which includes 12 U.S.C. § 5536] shall take effect on the designated transfer date."). The designated transfer date was July 21, 2011. Designated Transfer Date, 75 Fed. Reg. 57252, 57252 (Sept. 17, 2010).

As the Supreme Court has held, an individual's right to have fair notice of a law before it is enforced against him is grounded in the Constitution and "[e]lementary considerations of fairness." *Landgraf v. USI Film Products*, 511 U.S. 244, 265-66 (1994). Hence, there is a presumption against the retroactive application of statutes that is "deeply rooted" in American jurisprudence. *Id.* This presumption can only be overcome if the language of the statute shows Congress's "clear intent" that it have retroactive effect. *Id.* at 272; *accord Sarmiento Cisneros v. U.S. Atty. Gen.*, 381 F.3d 1277, 1281 (11th Cir. 2004) ("The standard for concluding that Congress unambiguously expressed an intent that a statute apply retroactively is demanding.").

There is neither express statutory language nor any indication in the CFPA that Congress intended for it to be applied retroactively. The CFPA, therefore, may not be enforced as to Defendants' conduct that predated July 21, 2011 if such enforcement would have "retroactive effect." *See Landgraf*, 511 U.S. at 280. A statute has retroactive effect when it "attaches new legal consequences to events completed before its enactment," including increasing a party's liability for past conduct, or imposing new duties with respect to transactions already completed. *Id.* at 270, 280. Here, the Bureau is attempting to enforce a new substantive cause of action with unique remedies that was created with the passage of an expansive new regulatory scheme. *See* 12 U.S.C. §§ 5536(a)(1)(B), 5565. Certainly the Bureau seeks to "attach new legal consequences" to Defendants' conduct before the CFPA was enacted. Therefore, the Bureau's attempt to bring CFPA claims for conduct that predated July 21, 2011 is impermissible, and those claims should be dismissed on this independent basis.[13]

---

[13] The Bureau tacitly acknowledged its lack of authority to bring CFPA claims for conduct predating July 21, 2011 in its pending enforcement action against ITT Educational Services, Inc. In its complaint, the Bureau expressly limited its claims of unfair and abusive practices under 12 U.S.C. § 5536(a)(1)(B) to conduct after July 21, 2011, but asserted a Truth-in-Lending Act claim for the same conduct dating back to March 2009. Compl. ¶¶ 165, 173, 182, 191, *CFPB v. ITT Educ. Servs., Inc.*, No. 14-292 (S.D. Ind. Feb. 26, 2014). A copy of the ITT complaint is attached hereto as Exhibit B.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing the Complaint with prejudice.

Respectfully submitted this 12th day of September, 2014.

*/s/ Christopher J. Willis*
Christopher J. Willis, Ga. Bar No. 766297
willisc@ballardspahr.com
Stefanie H. Jackman, Ga. Bar No. 335652
jackmans@ballardspahr.com
BALLARD SPAHR LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309-5915
Telephone (404) 678-9300
Facsimile: (404) 678-9301

Michael Bowers, Ga. Bar No. 071650
mbowers@balch.com
Christopher S. Anulewicz, Ga. Bar No. 020914
canulewicz@balch.com
BALCH & BINGHAM LLP
30 Ivan Allen Jr. Blvd., NW, Suite 700
Atlanta, Georgia 30308

*Counsel for Defendants*

**CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B**

I hereby certify that the foregoing has been computer processed with 14 point New Times Roman font in compliance with the United States District Court for the Northern District of Georgia Local Rule 5.1B.

Dated: September 12, 2014

*/s/ Christopher J. Willis*
Christopher J. Willis
Ga. Bar No. 766297

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I served the foregoing MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW with the Clerk of Court using the CM/ECF system which will automatically serve the following parties:

Lawrence Brown (Lawrence.Brown@cfpb.gov)
Thomas Ward (Thomas.Ward@cfpb.gov)
Consumer Financial Protection Bureau
ATTN: Enforcement
1750 Pennsylvania Ave., 10th Floor
Washington, D.C. 20552

Respectfully submitted this 12th day of September, 2014.

*/s/ Christopher J. Willis*
Christopher J. Willis, Ga. Bar No. 766297
willisc@ballardspahr.com

*Counsel for Defendants*