## In the United States District Court
## for the Northern District of Georgia
## Atlanta Division

Consumer Financial Protection Bureau,

     Plaintiff,

     v.

Frederick J. Hanna & Associates,
P.C., Frederick J. Hanna, individually,
Joseph C. Cooling, individually, and
Robert A. Winter, individually,

     Defendants.

**Civil Action No.
1:14-cv-02211-AT**

### Plaintiff's Response to Defendants' Motion to Dismiss

What is most striking about the Motion to Dismiss is the theme that underlies almost every argument: lawyers, particularly debt-collection lawyers, are above federal law. Defendants attempt to invoke a statutory exemption for lawyers. They point to the First Amendment and argue that the Bureau's claims would unduly burden their fundamental right, as lawyers, to file lawsuits. They contend, based on the Fifth Amendment, that the Bureau's claims would violate their equal-protection rights by impermissibly treating debt-collection lawyers, like themselves, differently from other lawyers. And they make other arguments

1

based on a supposed "principle" that regulating lawyers has been reserved for the states, or the quaint notion that lawyers, through state bar associations, should be allowed to police themselves.

But Congress sees things differently. It has passed laws, particularly the Fair Debt Collection Practices Act (FDCPA) and the Consumer Financial Protection Act of 2010 (CFPA), to hold lawyers accountable for their deceptive and unfair debt-collection practices, even when they are engaged in state-court litigation. These laws are fatal to every one of Defendants' arguments.

Defendants cannot rely on the CFPA's practice-of-law exclusion because it expressly preserves the Bureau's authority over attorneys who collect debts from consumers who are not their clients. They cannot rely on the First Amendment because the *Noerr-Pennington* doctrine does not protect deceptive and unfair debt-collection practices, such as those engaged in by Defendants. Their equal-protection argument fails because there is no fundamental right to practice law, and there is a rational basis for Congress's decision to prohibit debt-collection lawyers from filing deceptive suits and relying on affidavits when they know, or should know, that the affiant lacks personal knowledge. Nor is there merit to Defendants' other arguments. The Complaint states valid claims for violations of the FDCPA and the CFPA, and none of the Bureau's claims are time-barred.

2

At bottom, this case presents two straightforward issues:

1. Federal law prohibits debt collectors from falsely implying that a communication is "from an attorney." At the Hanna Firm, attorneys are not meaningfully involved in the preparation of debt-collection lawsuits. The Firm's attorneys spend less than a minute reviewing these suits, and they do not even review their clients' contracts with the debtors they sue. Do Defendants violate federal law by falsely implying that their debt-collection complaints are from attorneys?

2. Under federal law, one may not use deceptive or unfair means to attempt to collect a debt. Attorneys at the Hanna Firm regularly support their debt-collection suits with affidavits in which the affiants claim to have personal knowledge regarding the debts at issue. But Defendants know or should know that the affiants, in fact, have no such knowledge. Do Defendants violate federal law by using these affidavits to support their debt-collection suits?

Defendants have failed to demonstrate why the Court should not squarely address these issues. The Court should therefore deny the Motion to Dismiss.

## I.     The practice-of-law exclusion does not bar the Bureau's CFPA claims.

Defendants argue that the practice-of-law exclusion requires the Court to dismiss the Bureau's CFPA claims. The Court should reject this argument. First, by its terms, the exclusion applies only to attorneys who provide legal advice or services to consumers. Defendants, although licensed attorneys, do not provide

legal advice or services to consumers; rather, they serve clients with interests adverse to consumers, and therefore remain within the Bureau's reach. Second, to the extent the CFPA is ambiguous as to whether the exclusion applies, the Bureau's construction of the statute is, at least, "permissible," and is therefore entitled to *Chevron* deference. Finally, contrary to what Defendants say throughout their motion, regulating the practice of law is not reserved for the states. Rather, in enacting the CFPA, Congress empowered the Bureau to bring enforcement actions against debt-collection attorneys who violate federal law.

### A.    By its terms, the practice-of-law exclusion covers only attorneys who are providing legal advice or services to consumers.

The practice-of-law exclusion, found in § 1027(e) of the CFPA, restricts the Bureau's authority over "activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law."[1] But the exclusion includes a significant limitation that preserves the Bureau's authority over Defendants.

Section 1027(e)(2)(B) preserves the Bureau's authority over attorneys who provide a financial product or service "with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such

_____

[1] 12 U.S.C. § 5517(e)(1).

product or service."[2] Defendants provide a financial service by collecting consumer credit-card debt.[3] They provide that service "with respect to" consumers from whom they attempt to collect those debts. Because Defendants do not provide "legal advice" to those consumers "in connection with" Defendants' debt-collection services, the Bureau may assert CFPA claims against them.

Defendants contend that "preparing and filing collection lawsuits is . . . not a 'consumer financial product or service . . . offered or provided by [an] attorney with respect to [a] consumer.'"[4] This assertion, offered without support or even explanation, is simply wrong. The CFPA defines "consumer financial product or service" to include "collecting debt related to any consumer financial product or service."[5] That is what Defendants do, and they do it "with respect to" consumers from whom they attempt to collect credit-card debts allegedly owed to the Hanna Firm's commercial clients. Defendants' attempt to collect those debts is therefore subject to the Bureau's enforcement authority.

---

[2] *Id.* § 5517(e)(2)(B).
[3] *Id* § 5481(15)(A)(x) (defining "financial product or service" to include "collecting debt related to any consumer financial product or service").
[4] Mot. Dismiss at 12-13.
[5] *See* 12 U.S.C. § 5481(5)(B) & (15)(A)(x).

**B.**    **To the extent the statute is ambiguous, the Court must defer to the Bureau's reasonable interpretation.**

Even if the statute were not so clear, the Bureau has adopted a rule that makes clear that debt-collecting attorneys are subject to the CFPA. The Bureau's interpretation is entitled to deference.

In *City of Arlington v. FCC*, the Supreme Court considered "whether a court must defer under *Chevron* to an agency's interpretation of a statutory ambiguity that concerns the scope of the agency's statutory authority (that is, its jurisdiction)."[6] The Court answered that question in the affirmative. Quoting *Chevron*, it held that if an agency's interpretation "'is based on a permissible construction of the statute,' that is the end of the matter."[7]

In 2012, the Bureau issued a rule that determined the scope of its authority over debt collectors.[8] There, the Bureau carefully examined the practice-of-law exclusion and determined that it did *not* deprive the Bureau of jurisdiction over attorneys who were not providing legal services to the consumers from whom they were attempting to collect debts.[9] Under *City of Arlington* and *Chevron*, this

---

[6] *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013).

[7] *Id.* at 1874-75 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)).

[8] Defining Larger Participants of the Consumer Debt Collection Market, 77 Fed. Reg. 65,775 (Oct. 31, 2012) (codified at 12 C.F.R. pt. 1290).

[9] *Id.* at 65,784.

Court must defer to the Bureau's interpretation because it is, at least, "a permissible construction of the statute."

### C.   States' rights do not require the Court to read the practice-of-law exclusion differently from what it says.

Notwithstanding the statute's plain language, Defendants argue that the practice-of-law exclusion must be read differently to avoid offending "the principle that the regulation of the practice of law is and should be left to the states."[10] Simply put, there is no such principle. Long before it enacted the CFPA to cover attorneys who provide financial products and services with respect to consumers who are not their clients, Congress decided to regulate practicing attorneys, including those who collect consumer debts. In 1986, Congress amended the FDCPA to repeal an exemption for "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client."[11]

Not surprisingly, Defendants cite to no case holding that the regulation of the practice of law belongs exclusively to the states – how could they, given the Supreme Court's holding in *Heintz v. Jenkins* that the FDCPA "applies to

---

[10] Mot. Dismiss at 8.
[11] *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).

attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation"?[12]

Defendants rely most on *State ex rel. Doyle v. Frederick J. Hanna & Associates, P.C.*, in which the Georgia Supreme Court held that a state agency could not enforce debt-collection laws against the Hanna Firm because only the state bar could regulate the practice of law.[13] But even that court "recognize[d] that the debt collection practices of attorneys 'would be subject to investigation by the Federal Trade Commission, the regulatory entity responsible for enforcement of the FDCPA.'"[14] The *Doyle* court thus observed what Defendants cannot bring themselves to admit: "the State Bar is *not* the sole entity authorized to investigate a lawyer for engaging in unfair debt collection practices."[15] The Bureau may also do that, and it has lawfully done so here.

Finally, to support their argument that the statute means something different from what it says, Defendants point to remarks by Representative John

---

[12] *Id.* at 299.

[13] Mot. Dismiss at 9-10 (discussing *State ex rel. Doyle v. Frederick J. Hanna & Assocs., P.C.*, 287 Ga. 289, 291-92 (2010)).

[14] *Doyle*, 287 Ga. at 293 (internal quotation marks omitted) (decided before Congress amended the FDCPA to make it enforceable by *both* the FTC *and* the Bureau).

[15] *Id.* (emphasis added).

Conyers. Whatever the value of those remarks – not much, given the statute's plain language[16] – nothing about them is inconsistent with the Bureau's case.

To be sure, Representative Conyers addressed the important role states play in regulating attorneys. But his remarks focused on attorneys who provide legal services to consumers, such as the "consumer clients of bankruptcy lawyers, consumer lawyers, and real estate lawyers."[17] Only those attorneys, acting "exclusively within the scope of an attorney-client relationship," were intended to be placed beyond the Bureau's reach.[18] Consistent with the exclusion's plain language, Representative Conyers noted that to be exempt, "the product or service must not be offered by . . . the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with it."[19] Most significantly, Representative Conyers did not discuss lawyers, like those at the Hanna Firm, working for big banks or debt-

---

[16] *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1266 (2011) ("[C]lear evidence of congressional intent may illuminate ambiguous text. We will not take the opposite tack of allowing ambiguous legislative history to muddy clear statutory language."); *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 457 (2002) ("Floor statements from two Senators cannot amend the clear and unambiguous language of a statute. We see no reason to give greater weight to the views of two Senators than to the collective votes of both Houses, which are memorialized in the unambiguous statutory text.").

[17] 156 Cong. Rec. E1349 (daily ed. June 30, 2010) (Speech of Hon. John Conyers, Jr. on the Conference Report).

[18] *Id.*

[19] *Id.*

buyers who have interests *adverse* to consumers. These lawyers are, as the statute provides and as Congress intended, subject to the Bureau's powers.

## II. The Constitution does not bar the Bureau's claims.

Defendants argue that the *Noerr-Pennington* doctrine, based on the First Amendment's Petition Clause, and the Fifth Amendment's Equal Protection Clause require the Court to dismiss this case. Yet Defendants do not cite to a single case where the court held that either of these provisions barred claims against a debt collector for making deceptive representations in litigation. This Court should reject Defendants' unsupportable constitutional arguments.

### A.   The *Noerr-Pennington* doctrine does not bar the Bureau's claims.

Defendants argue that the Court must dismiss this case based on the *Noerr-Pennington* doctrine, a rule of statutory construction that requires courts to "construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise."[20] Defendants contend that the Bureau's attempt to enforce the FDCPA and the CFPA would unduly burden their right to file debt-collection lawsuits. There is no support for this argument.

---

[20] *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006).

At the outset, neither *Noerr-Pennington* nor the Petition Clause provides constitutional protection to unlawful misrepresentations simply because they were made in connection with litigation. "Misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process."[21] In the Eleventh Circuit, misrepresentations made to a "governmental agency . . . acting judicially . . . do not enjoy *Noerr* immunity," regardless of whether the underlying petitioning activity is a "sham."[22] Unlawful representations made by debt collectors in the context of state-court collection actions are not entitled to any greater First Amendment protection.

Consistent with this principle, "several courts have concluded that the *Noerr-Pennington* doctrine does not bar suits under the FDCPA based on litigation misconduct by debt collectors."[23] These cases rest largely on the Supreme Court's decision in *Heintz*, which courts have read to hold "that the FDCPA [was] intended to burden debt-collectors even when they are engaged in

---

[21] *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972).
[22] *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 955 (11th Cir. 1986).
[23] *Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461, 476 n. 81 (S.D.N.Y. 2013) (citing cases).

litigation."[24] Not surprisingly, then, not a single court in the Eleventh Circuit has ever applied *Noerr-Pennington* to bar an FDCPA claim.[25]

Defendants rely on a case from the Eighth Circuit, *Hemmingsen v. Messerli & Kramer, P.A.,* to support their argument.[26] There, Defendants contend, the court "applied this First Amendment protection to claims against a debt collection law firm accused of violating the FDCPA."[27] But Defendants' characterization of *Hemmingsen* is wrong, and has been previously rejected in this District.

Earlier this year, in *Austin v. Frederick J. Hanna & Associates, P.C.*, Chief Magistrate Judge King rejected the Hanna Firm's reliance on *Hemmingsen* in an FDCPA class action. As the court observed, *Hemmingsen* "does not stand for the proposition that attorneys engaged in litigation are immune from liability under

---

[24] *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 615 (6th Cir. 2009); *see also Basile v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 632 F. Supp. 2d 842, 846 (N.D. Ill. 2009) (agreeing with other courts that "to hold that the *Noerr-Pennington* doctrine immunized debt collection suits from the FDCPA would be contrary to *Heintz*'s holding, which contemplated attorney liability under the FDCPA").
[25] *See Roban v. Marinosci Law Group*, --- F. Supp. 2d ---, No. 14-60296-Civ-Scola, 2014 WL 3738628, *2 (S.D. Fla. July 29, 2014) ("[Defendants] failed to cite to a single case from the Eleventh Circuit that extends the *Noerr-Pennington* doctrine to claims brought under the FDCPA. The Court could not find any in its independent research.").
[26] *See* Mot. Dismiss at 34 (citing to *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814 (8th Cir. 2012)).
[27] *Id.*

the FDCPA as a matter of law."[28] Rather, the *Hemmingsen* court merely

recognized that "resolving the issue of whether the filing of a law suit violates

the FDCPA is a factual determination, to be made on a case-by-case basis."[29]

    In this case, the Bureau has alleged facts that, if true, would defeat

Defendants' claim of constitutional immunity. Indeed, this alone distinguishes

*Hemmingsen*. The *Hemmingsen* court addressed a district court's ruling on

summary judgment. After extensively reviewing the facts, the Eighth Circuit

concluded that the plaintiff had failed to produce "any evidence" that anyone

"was misled, deceived, or otherwise duped" by the defendant's state-court

pleadings.[30] Here, in contrast, the Bureau has alleged that Defendants (1) *falsely*

*represented* to consumers that their debt-collection suits were from attorneys

when, in fact, attorneys were not meaningfully involved in preparing them;[31]

and (2) *falsely represented* to consumers the character, amount, or legal status of

debts by supporting their suits with affidavits that they knew or should have

known were executed by persons who lacked knowledge.[32] For good reason, no

---

[28] *Austin v. Frederick J. Hanna & Assocs., P.C.*, No. 1:14-CV-00561-SCJ-JF, 2014 WL 4724885, at *6 (N.D. Ga. July 10, 2014) (King, M.J.).

[29] *Id.* at *7.

[30] *Hemmingsen*, 674 F.3d at 819 ("[W]e have no difficulty affirming the dismissal of these FDCPA claims on the merits.").

[31] *See* Compl. ¶ 38.

[32] *See id.* ¶¶ 23, 37, 38.

court has ever held that attorneys enjoy immunity from liability for engaging in such reprehensible behavior.[33]

Because *Noerr-Pennington* does not protect debt-collection attorneys who make false or deceptive representations in litigation, the Court should reject Defendants' argument that it requires dismissal of the Bureau's FDCPA claims.

The Court should likewise reject Defendants' argument that *Noerr-Pennington* bars the Bureau's CFPA claims. In the CFPA, Congress expressly and broadly defined "consumer financial product or service" to include "collecting debt related to any consumer financial product or service."[34] Congress surely knew, in light of the Supreme Court's *Heintz* decision, that "collecting debts" includes actions taken by lawyers engaged in litigation. It would be unreasonable, therefore, to interpret the CFPA as excluding such activities, particularly because Congress expressly addressed in § 1027(e) which lawyer activities should be subject to the CFPA and which should not.

---

[33] *See, e.g.*, *Hartman*, 569 F.3d at 617 (holding that *Noerr-Pennington* does not protect "a debt collector who makes a misleading or deceptive representation intentionally, in bad faith, or in the absence of procedures intended to avoid that type of error"); *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 176 (E.D.N.Y. 2013) (holding that "*Noerr-Pennington* does not provide immunity for intentional misrepresentations made in litigation").

[34] *See* 12 U.S.C. § 5481(5)(B) & (15)(A)(x).

**B.     The Equal Protection Clause does not bar the Bureau's claims.**

Defendants argue that the Bureau's claims would treat them differently from other lawyers with respect to a fundamental right, thus triggering strict scrutiny that the Complaint could not withstand.[35] The argument, it seems, is that other lawyers – not those who collect debts – are permitted to (1) file suits without meaningful attorney involvement and (2) rely on supporting affidavits despite knowing that the affiant lacks personal knowledge, and that there is no rational basis for treating Defendants (and those similarly situated) differently.

This argument rests on a faulty premise: that the right to practice law is fundamental. In fact, it is not, as the Eleventh Circuit has squarely held.[36] So to succeed on their equal-protection point, Defendants must establish that Congress's tailored regulation of debt-collection attorneys is "wholly irrational"

---

[35] *See* Mot. Dismiss at 35.

[36] *See Schwarz v. Kogan*, 132 F.3d 1387, 1391 n.2 (11th Cir. 1998) ("[T]his Circuit has indicated that there is no fundamental right to practice law . . . ."); *Kirkpatrick v. Shaw*, 70 F.3d 100, 103 (11th Cir. 1995) ("The right to practice law is not a fundamental right and therefore rational basis review is the appropriate standard for classifications affecting applicants for admission to the bar."); *see also Moss v. Dunwoody*, 750 S.E.2d 326, 330 (Ga. 2013) (holding that "the right to practice law is not a fundamental right" where city taxed some lawyers but not others).

by "negat[ing] every conceivable justification for the classification."[37] Defendants cannot do this, and they do not even try.

Defendants do not cite to a single case where the court held that the FDCPA's enforcement is limited by the Equal Protection Clause, and at least one court has rejected this argument. In *Ehsanuddin v. Wolpoff & Abrahmson*, a consumer sued a law firm under the FDCPA for attempting to collect, through litigation, a debt that the firm knew to be time-barred.[38] The firm argued that the consumer's suit should be dismissed because the FDCPA, to the extent it outlaws filing time-barred suits to collect debts, violates the Equal Protection Clause, as attorneys are not prohibited from filing other types of time-barred cases.[39]

The court rejected this "novel argument," holding that the firm "ha[d] not addressed the rationality of the government's interest in eliminating unfair and deceptive debt collection practices in order to protect inexperienced and unsuspecting consumers and, thus, ha[d] not negated every possible justification

---

[37] *Brian B. ex rel. Lois B. v. Penn. Dep't of Ed.*, 230 F.3d 582, 586 (3rd Cir. 2000); *see also  FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").

[38] *Ehsanuddin v. Wolpoff & Abrahmson, LLP*, No. CIV A 06-708, 2007 WL 543052, at *2 (W.D. Pa. Feb. 16, 2007).

[39] *Id.* at *5.

for the alleged arbitrary classification."[40] The court was unmoved by "the fact that there are lawyers who are able to bring tort actions after the statute of limitations has run on those claims," and concluded that the law firm had failed "to show that the alleged classification [was] wholly irrational or invidiously discriminatory."[41] (Apparently, the law firm lacked the temerity to suggest that it had a fundamental right to file time-barred suits, such that strict scrutiny applied.)

Like the court in *Ehsanuddin*, this Court should reject Defendants' argument that the FDCPA's special treatment of debt-collection lawyers violates the Equal Protection Clause.

## III.     The Complaint states claims for relief.

This case challenges two of Defendants' practices: (1) representing to consumers that their debt-collection suits were from attorneys when, in fact, attorneys were not meaningfully involved in preparing or filing them; and (2) supporting their suits with affidavits that they knew or should have known were executed by persons who lacked knowledge.

The Court should dismiss a pleading for failure to state a claim upon which relief can be granted only where the complaint does not contain

---

[40] *Id.*
[41] *Id.*

allegations that support recovery under any recognizable legal theory.[42] The

Court must construe the pleading in the non-movant's favor and accept its

allegations of facts as true.[43] While mere "labels and conclusions, and a formulaic

recitation of the elements of a cause of action," will not suffice, the pleader need

not provide "detailed factual allegations" to survive dismissal.[44] In essence, the

pleading "must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face."[45] The Complaint states claims under the

FDCPA and the CFPA relating to both of the challenged practices.

> **A.**      **The Complaint states valid claims related to attorneys' lack of involvement in preparing and filing the Hanna Firm's complaints.**

Defendants argue that the Bureau's allegations regarding the lack of

meaningful attorney involvement in the preparation of complaints do not state

claims under the FDCPA or the CFPA. Defendants' contentions have no merit.

---

[42] *Cline v. Advanced Neuromodulation Sys., Inc.*, --- F. Supp. 2d ---, No. 1:11–CV–4064–AT, 2014 WL 1624084, at *1 (N.D. Ga. March 31, 2014).

[43] *Id.*

[44] *Id.*

[45] *Id.* (internal citations and quotation marks omitted).

### 1. An attorney violates the FDCPA by filing a complaint signed by an attorney who was not meaningfully involved in preparing it.

Section 807(3) of the FDCPA prohibits "the false representation or implication that . . . any communication is from an attorney."[46] Defendants argue that "[t]here is no applicable standard under the FDCPA for how an attorney must prepare and file a complaint in court."[47] The statutory analysis Defendants urge is unclear from this argument. They do not explain whether they think § 807(3) is for some reason inapplicable to complaints, or that the provision, despite its applicability, nevertheless provides "no applicable standard" for complaints.

Whatever Defendants' argument, there is no doubt that complaints are "communications" under § 807(3). The plain language of the statute settles this: "communication" is defined as the "conveying of information regarding a debt directly or indirectly to any person through any medium."[48] A complaint in a civil action seeking to collect a debt unquestionably conveys information regarding the debt. Other provisions of the statute reinforce this conclusion. For example, the FDCPA provision addressing validation of debts, § 809(d), provides

---

[46] 15 U.S.C. § 1692e(3).
[47] Mot. Dismiss at 18.
[48] 15 U.S.C. § 1692a(2).

that "[a] *communication in the form of a formal pleading in a civil action* shall not be treated as an initial communication" for purposes of notice requirements contained in that section.[49] As the Fourth Circuit has observed, § 809(d) thus presumes that court pleadings are "communications"; were they not, excluding them from the category of "initial communication[s]" would be unnecessary.[50] Other federal courts of appeals have reached the same conclusion.[51]

Nor is there any doubt that a communication signed by an attorney represents that it is "from" that attorney. As Defendants recognize, there is a substantial body of case law predicated on exactly this conclusion.[52] And even if the statute

---

[49] 15 U.S.C. § 1692g(d) (emphasis added); *see also* 15 U.S.C. § 1692e(11) (excluding pleadings from separate provision related to notice requirements).

[50] *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007).

[51] *See Hemmingsen*, 674 F.3d at 818; *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031-32 (9th Cir. 2010). One court of appeals has arguably disagreed, but Defendants do not rely on its decision, and it is contrary to the language of the statute and the weight of authority. *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 943-44 (7th Cir. 2011) (holding that FDCPA covers communications directed toward consumers, but not those intended solely to mislead judges).

[52] *See, e.g., Gonzalez v. Kay*, 577 F.3d 600, 604 (5th Cir. 2009) (holding that "[t]he use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it") (quoting *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997) (in turn quoting *Clomon v. Jackson*, 988 F.2d 1314, 1328 (2d Cir.1993)); *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1003 (3d Cir. 2011) (concluding that letters signed by attorneys who have had no meaningful involvement with a consumer's file violate § 807(3) because they represent that they are from the signing attorney but are not from the attorney acting in a legal capacity); *Avila v. Rubin*, 84 F.3d 222, 228 (7th Cir. 1996)

and case law were not so clear on these points, the same result would be compelled because the FDCPA is a remedial statute, and must be broadly interpreted to give effect to its intent.[53]

Defendants assert that the meaningful-attorney-involvement standard, initially developed in cases involving dunning letters, is inapplicable where the communication is a complaint. This contention fails for several reasons. First, as a matter of statutory interpretation, the words "falsely represent that . . . a communication is from an attorney" must be interpreted consistently regardless of the kind of communication at issue. Section 807(3) is applicable to "communications"; it does not distinguish between different kinds of communications. It is well established that the words of a statute applicable to several categories of conduct should be read consistently regardless of which category is at issue.[54] Defendants offer no reason to depart from this principle.

Consistent with the statute's terms, several district courts have concluded that the accuracy of a complaint's representation that it is "from" an attorney is

---

(concluding that dunning letters bearing facsimile of attorney signature represented that they were from attorney).
[53] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).
[54] *See, e.g.*, *Clark v. Martinez*, 543 U.S. 371, 378 (2005) (concluding that statute applicable to three categories of aliens must be read to apply consistently to all three because "[t]o give th[e] same words a different meaning for each category would be to invent a statute rather than interpret one").

properly determined by looking to whether the attorney was meaningfully

involved in preparing it.[55]

In *Bock v. Pressler & Pressler*, a well-reasoned opinion announced shortly

before the Bureau filed this action, a district court addressed this issue and

concluded that the meaningful-attorney-involvement requirement applies

equally to dunning letters and complaints.[56] The court carefully considered the

precise "policy" argument Defendants raise here – that the danger of debtors'

being improperly "intimidated by unfounded legal claims is diminished if not

eliminated" when a lawsuit is filed because the consumer accurately perceives

that he or she is now involved in litigation.[57] The court also considered the

contention that court rules – that is, rules governing attorney conduct – should be

---

[55] *See, e.g., Bock v. Pressler & Pressler, LLP*, --- F. Supp. 2d ---, No. 11–7593, 2014 WL 2937929 (D.N.J. June 30, 2014); *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08–CV–1392 JLS, 2011 WL 3176453, at *9 (S.D. Cal. July 26, 2011), *also considered by* 755 F.3d 1109, 1125, 1125 n.15 (9th Cir. 2014) (reversing summary judgment in favor of law firm and noting in dicta that it would specifically not enter summary judgment in favor of law firm on consumers' meaningful-attorney-involvement claims); *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920, 2012 WL 661456, at *13 (E.D.N.Y. Feb. 28, 2012) (recommendation to deny law firm's motion to dismiss § 807(3) claim where firm filed more than 10,000 lawsuits in one year with only three staff attorneys), *adopted by*, No. 10 CV 3920, 2012 WL 1882976 (E.D.N.Y. May 24, 2012); *Berg v. Blatt, Hasenmiller, Leibsker & Moore LLC*, No. 07 C 4887, 2009 WL 901011, at *13 (N.D. Ill. March 31, 2009);  *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 100 (E.D.N.Y. 2009).
[56] *Pressler*, 2014 WL 2937929.
[57] *Id.* at *12.

deemed to cover filed complaints, to the exclusion of the FDCPA.[58] The court properly rejected each of these arguments: "The short answer to these contentions is that it does not matter. Because the statutory language is broad enough to encompass a civil complaint, it must be given its natural scope."[59]

Further, even if the plain language of the statute did not require that complaints be subject to the same meaningful-attorney-involvement requirement that has long been applied to dunning letters, Defendants are wrong that the "rationale" for that requirement is applicable only in that context. To the extent the relevant cases address a rationale in support of their holdings, it is at least equally relevant – indeed, potentially more so – when the communication at issue is a complaint. As the court stated in *Avila v. Rubin*, "if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file."[60]

Contrary to Defendants' argument, the concern with "taking advantage of the special connotation" of an attorney's involvement is, if anything, *heightened*

---

[58] *Id.*
[59] *Id.*
[60] *Avila*, 84 F.3d at 229.

when a complaint is filed. A consumer is more likely to presume that an attorney has been meaningfully involved in the preparation of a complaint than a dunning letter, and thus more likely to conclude that the complaint reflects the professional judgment of an officer of the court that an action against the consumer is appropriate.

### 2.   A complaint signed by an attorney but lacking meaningful attorney involvement is also deceptive under the CFPA.

While most of their arguments concern the Bureau's FDCPA claims, Defendants also assert that the Complaint, on this point, fails to state a claim under the CFPA. As an initial matter, Defendants' FDCPA violations, as a matter of law, also constitute CFPA violations.[61] But the conduct alleged in the Complaint also constitutes independent CFPA violations. A CFPA deception allegation requires a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances.[62] The Complaint sufficiently alleges each of these elements, and Defendants' arguments to the contrary are without merit.

---

[61] 12 U.S.C. § 5536(a)(1)(A); 15 U.S.C. § 1692*l*(c).

[62] *See, e.g.*, *FTC v. Stefchanik*, 559 F.3d 924, 928 (9th Cir. 2009) (stating elements of deception claim under FTC Act); *Illinois v. Alta Colleges*, No. 1:14–cv–03786, 2014 WL 4377579, at *4 (N.D. Ill. Sept. 4, 2014) (noting that standard for CFPA deception claim is the same as under the FTC Act).

Defendants first argue that because "there is no federal 'meaningful attorney involvement' standard for preparing and filing complaints in state court," they "could not have misrepresented that the standard was met."[63] This argument is simply wrong, for the reasons described above. In short, there is a meaningful-attorney-involvement requirement, even if Defendants would prefer not to be subject to it.

Second, Defendants argue that "no consumer reacting reasonably to a complaint filed by [a Hanna Firm] attorney could be misled with respect to whether his or her purported creditor had initiated a lawsuit to collect a debt."[64] Yet the misrepresentation conveyed by the Hanna Firm's complaints is not that a lawsuit has been initiated, but rather that an attorney has been meaningfully involved in preparing it. That misrepresentation by Defendants is likely to mislead consumers.

Lastly, Defendants argue that even if they misrepresented that the complaints were from attorneys, that representation was immaterial because "the reality remained that the consumer had become the subject of a lawsuit filed by [the Hanna Firm] on behalf of its client."[65] A representation is material if it is

---

[63] Mot. Dismiss at 25.

[64] *Id.*

[65] *Id.*

likely to be relied upon.[66] The Eleventh Circuit, like the aforementioned circuits, employs the "least-sophisticated-consumer" standard to determine whether a debt-collection practice is deceptive.[67]

Among other things, a complaint in which the signing attorney is not meaningfully involved falsely conveys to a consumer that an attorney has reviewed the consumer's file and reached a "considered, professional judgment" that the consumer is an appropriate candidate for legal action.[68] As the Seventh Circuit has concluded, such a communication implies the attorney's "professional judgment that the debtor is delinquent and is a candidate for legal action."[69] Consumers' reactions to these lawsuits are likely to be affected by such a representation.[70] For example, just as with a dunning letter "signed" by an attorney, a consumer might give more credence than deserved to the allegations in a complaint filed by the Hanna Firm. This "advantage of the special connotation" afforded communications purportedly "from an attorney" is

---

[66] *FTC v. Washington Data Res.*, 856 F. Supp. 2d 1247, 1272 (M.D. Fla. 2012).

[67] *Leblanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193-1194 (11th Cir. 2010).

[68] *See Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

[69] *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

[70] *Cf., e.g.*, *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 970 (N.D. Ohio 2009) (holding that affiant's misrepresentation that he had personal knowledge of debtor's account was material particularly in light of consumer's understandable confusion over the nature of the transferred debt).

precisely why the meaningful-attorney-involvement standard was developed.[71]
A consumer's decision to settle, retain an attorney, or even show up to court all
would likely be affected as the Bureau has alleged.[72]

### 3.   Application of the meaningful-attorney-involvement standard neither renders the FDCPA void for vagueness nor impermissibly interferes with states' regulation of the practice of law.

Defendants contend that if the prohibition on misrepresenting that a
communication is from an attorney is interpreted as containing a meaningful-
attorney-involvement requirement, then the FDCPA would be
"unconstitutionally vague," at least as the Bureau seeks to apply it here.

Economic regulations like the FDCPA are invalidated only if they demand
compliance "in terms so vague and indefinite as really to be no rule or standard
at all."[73] Defendants' problem with the FDCPA, however, is its breadth, not its
vagueness. Indeed, Defendants' motion repeatedly recognizes and cites to the
standard that numerous courts apply to deceptive communications "from an
attorney" under the FDCPA; Defendants simply contend that the standard

---

[71] *See Bock*, 2014 WL 2937929, at *9 (citing *Avila*, 84 F.3d at 229).
[72] *See Samuels v. Midland Funding, LLC*, 921 F. Supp. 2d 1321, 1332-33 (S.D. Ala. 2013) (holding that materiality of deceptive debt-collection representation is measured by the "potential effect" on a least-sophisticated consumer).
[73] *Hester v. Graham, Bright & Smith, P.C.*, 289 Fed. App'x 35, 42-43 (5th Cir. 2008) (rejecting argument that "debt collector" definition is unconstitutionally vague).

should not be applied to complaints. But it does not follow from that argument that debt collectors are not given a "reasonable opportunity" to determine what kinds of deceptive communications the FDCPA proscribes.

Finally, Defendants argue that "Congress did not intend for the FDCPA to interfere with states' autonomy to regulate lawyers engaged in litigation."[74] But as discussed above, in 1986, Congress amended the FDCPA specifically to make federal law applicable to lawyers. And it did so, at least in part, because the states had failed to properly police debt-collection attorneys.[75] The Court should therefore reject Defendants' repeated suggestions that they are beyond federal reach.

### B.    The Bureau's claims based on Defendants' deceptive and unfair use of affidavits likewise state valid claims for relief.

#### 1.    Rule 9(b)'s heightened-pleading standard does not apply.

Defendants argue that the Complaint's FDCPA deception claims related to Defendants' use of affidavits "sound in fraud" and must be dismissed under

---

[74] Mot. Dismiss at 22.

[75] H.R. Rep. No. 99-405, at 6-7 (1985) ("One . . . basis for the attorney exemption was a belief that bar associations would adequately police attorney violations. That has proven not to be the case. . . . Clearly, bar associations have failed to fulfill their obligations underlying the premise of the attorney exemption.").

Rule 9(b)'s heightened-pleading standard.[76] But the Bureau's claims are not

subject to Rule 9(b)'s strictures, and even if they were, the Complaint would meet

its requirements.

An FDCPA claim under § 807 differs significantly from a fraud allegation.

The case law from district courts in other circuits that Defendants rely on is not

compelling. None of the cases Defendants cite to address in more than

conclusory fashion whether Rule 9(b) should be applied to misrepresentation

claims under the FDCPA.[77] In contrast, those district courts that have grappled

with the question have found that Rule 9(b) does not apply.[78] In *Neild v. Wolpoff*

---

[76] *See* Mot. Dismiss at 26-28. In addition to the deception claims, the Complaint alleges that Defendants' use of affidavits violates the FDCPA's prohibition against the use of unfair and unconscionable means to collect a debt. *See* Compl. ¶¶ 40-41. Defendants do not appear to argue, and cite no authority to suggest, that this claim would be subject to Rule 9(b).

[77] *See Dickman v. Kimball, Tirey & St. John, LLP*, 982 F. Supp. 2d 1157, 1165-66 (S.D. Cal. 2013) (concluding summarily that Rule 9(b) was satisfied, without analyzing its applicability); *Kupferstein v. RCS Ctr. Corp.*, No. 03-CV-1497, 2004 WL 3090582, at *2 (E.D.N.Y. Aug. 11, 2004) (same); *Knowles v. I.C. Sys., Inc.*, No. Civ-90-822E, 1991 WL 5182, at *2 (W.D.N.Y. Jan. 14, 1991) (same).

[78] *See, e.g., Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918, 924 (E.D. Va. 2006) (analyzing elements of § 807 claim as compared to those of fraud claims, and concluding that Rule 9(b) should not be applied to the former); *Sullivan v. Equifax, Inc.*, No. CIV. A. 01-4336, 2002 WL 799856, *3 (E.D. Pa. Apr. 19, 2002) (concluding that Rule 9(b) should not be applied to claims under § 807 because that provision does not require proof of elements of fraud or mistake); *see also Lauer v. Nakon*, No. 05 C 3999, 2006 WL 418676, *3 (N.D. Ill. Feb.16, 2006) ("Rule 9(b) does not apply to a § 807 claim."); *Cargile v. Baylor Health Care Sys.*, No. Civ. A. 3:04-CV-1365-B, 2005 WL 2445482, *5–6 (N.D. Tex. Aug. 10, 2005) (applying

*& Abramson*, for example, the court noted that a § 807 claim does not require a showing of actual reliance on a false representation, actual damages, or scienter, whereas a fraud claim would require each of those elements.[79]

While there is no case law addressing whether Rule 9(b) is applicable to deception claims under the CFPA, the better-reasoned authority also holds that Rule 9(b) does not apply to deception claims under a similar provision, § 5 of the FTC Act.[80] By its terms, Rule 9(b) only applies to claims for "fraud or mistake." A claim for deceptive acts or practices under § 5, like a claim under the CFPA, is not a fraud claim,[81] and the Eleventh Circuit has recognized that such claims require proof of different elements.[82] The Court should therefore reject Defendants' assertion that Rule 9(b) applies to the Bureau's CFPA claims.

## 2. Even if Rule 9(b) did apply, the Complaint would satisfy the heightened-pleading standard.

---

Rule 8(a) to § 807 claim); *Prophet v. Myers*, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008) (holding that Rule 9(b) is not applicable to FDCPA claim).
[79] *Neild*, 453 F. Supp. 2d at 924.
[80] *See FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1204 n. 7 (10th Cir. 2005) (holding Rule 9(b) inapplicable to claims under § 5); *FTC v. Sterling Precious Metals, LLC*, No. 12–80597–CIV, 2013 WL 595713 at *3 (S.D. Fla. Feb. 15, 2013) (same).
[81] *See FTC v. Cantkier*, 767 F. Supp. 2d 147, 154 (D.D.C. 2011).
[82] *Compare Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (setting forth five elements for a fraud claim) *with FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003) (setting forth three elements for a deceptive claim).

Even if Rule 9(b)'s heightened-pleading standard were to be applied to the Bureau's affidavit-related claims, it would be met. As the Eleventh Circuit has held, to meet the Rule 9(b) standard it is sufficient to plead the "who, what, when, where, and how" of the allegedly false statements and then allege generally that those statements were made with the requisite intent.[83] The Complaint alleges that many of the affidavits the Hanna Firm filed in support of its complaints were obtained from, and executed by, the Firm's debt-buyer clients; that the affidavits represented that the affiants had knowledge of the ownership and validity of the debts at issue; that the affidavits were filed in the Firm's Georgia collection suits between 2009 and 2013; and that the affiants did not have the personal knowledge they asserted.[84] The Complaint also alleges that the Firm's debt-buyer clients could not support their collection activities with basic documents, such as the contracts underlying the debts or the chain of title evidencing the debt buyer's standing to sue the consumer.[85] And the Complaint alleges that the Firm's attorneys knew or should have known that the affiants did

---

[83] *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).
[84] Compl. ¶¶ 13, 23-24.
[85] *Id.* ¶ 20.

not have the knowledge they asserted.[86] These allegations satisfy the requirements of the Rule.

### 3. The Bureau's affidavit-related claims under the FDCPA and CFPA are plausible.

Defendants further contend that the Bureau's allegations relating to client affidavits fail "to state a claim under Rule 8(a)'s plausibility standard."[87] But Defendants misinterpret the plausibility standard, and the lone district court decision they rely on is unpersuasive.

First, the standard elucidated in *Iqbal* and *Twombly* does not impose the test Defendants urge on the Court. Defendants assert that the Complaint does not sufficiently support the claim that the affidavits in question were made without personal knowledge. Yet, as discussed above, the Complaint describes the Firm's debt-buyer clients' inability to support their litigation claims and avers that the affidavits executed by those clients were made without personal knowledge of asserted facts relating to the validity and ownership of the debts. To require more in this context would amount not to imposing a plausibility standard, but to refusing to accept the Complaint's factual allegations as true – an approach the Court in *Iqbal* and *Twombly* rejected.

---

[86] *Id.* ¶ 24.
[87] Mot. Dismiss at 28.

Nor does *Ness v. Gurstel Chargo, P.A.*, help Defendants. There, the court concluded that an allegation that the defendants had filed affidavits misrepresenting their knowledge of the debts in debt-collection lawsuits failed to state a claim under Rule 8(a). The court's conclusion, however, was predicated on the absence of *any* facts that would support an inference that the conclusions related to use of affidavits supported relief. Here, as described above, the Bureau has alleged precisely such facts.

In sum, the Complaint's allegations of deceptive use of affidavits in collection suits state plausible claims for relief, and Defendant's motion should be rejected on this point.[88]

### 4.   Defendants' assertion that they are entitled to rely on their clients' affidavits does not support dismissal.

Defendants argue that they are "entitled to rely on the 'objectively reasonable representations'" of their clients, and assert that the Bureau's affidavit-related FDCPA claims should be dismissed for this reason. Defendants are wrong.

---

[88] *See Keylard v. Mueller Anderson, P.C.*, No. 13 C 2468, 2013 WL 4501446, at *2 (N.D. Ill. Aug. 22, 2013); *Harbison v. Litow & Pech, P.C.*, No. 4:12–cv–2180 SNLJ, 2013 WL 1095654, at *5 (E.D. Mo. Mar. 13, 2013); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 424 (S.D.N.Y. 2010); *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1302 (N.D. Ga. 2010); *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 970 (N.D. Ohio 2009); *Williams v. Javitch, Block & Rathbone*, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio 2007).

As described above, the FDCPA applies to lawyers' conduct in litigation. The statute does not contain a "carve-out" from liability for misrepresentations made by lawyers in litigation, as Defendants appear to advocate. The FDCPA does contain a "bona fide error" defense, which protects those subject to its requirements from liability in certain circumstances, although the defense does not shield a debt collector's unreasonable reliance on a creditor's representation.[89] The mere existence of such a potential affirmative defense, however, does not support a motion to dismiss.[90] In short, even if Defendants could show good faith and reasonable reliance on their debt-buyer clients' affidavits to establish an affirmative defense, that would not support dismissal of any part of the Complaint.

## IV.   The one-year limitations period in § 813 does not apply to the Bureau's enforcement action.

Defendants contend that the Bureau's FDCPA claims are subject to a one-year limitations period under § 813.This argument has no merit. The FDCPA limitations provision Defendants rely on, § 813, applies to *private* FDCPA actions, not government enforcement actions. The FDCPA's plain text, its legislative

---

[89] *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949 (9th Cir. 2011) (finding reliance on client's representation unreasonable where underlying service-level agreement included disclaimer regarding accuracy of data provided to law firm).

[90] *See Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

history, and the established principles that disfavor time limitations on government actions render this conclusion unmistakable, as described below.

### A. The FDCPA's plain language indicates that § 813's limitations provision is inapplicable to government enforcement actions.

First, § 813(d)'s limitations provision refers to "liability created by this [subchapter]."[91] Yet "liability" under the FDCPA refers to liability *to private consumers*, not the government; § 813(d) thus does not apply to government actions. That the term "liability" must be read to refer only to liability to a private consumer is apparent from § 813(a), which provides that "any debt collector who fails to comply with any provision of this subchapter *with respect to any person* is *liable to such person*."[92] This provision would be incongruous if read to apply to a government enforcement action. A debt collector's violation of the FDCPA is "with respect to" a consumer, and renders him liable to that consumer. But such a violation is not "with respect to" the Bureau or any other government agency in any meaningful sense.

---

[91] 15 U.S.C. § 1692k(d). As enacted, § 813(d) begins "An action to enforce any liability created by this title . . . ." FDCPA, Pub. L. 95-109, § 813(d), 91 Stat. 874, 881 (1977). The word "title" was replaced with "subchapter" when the Act was codified.

[92] *Id.* § 1692k(a) (emphasis added).

By contrast, § 814(b), which authorizes the Bureau's enforcement action,[93] makes no reference to enforcing "liability." Instead, it refers to the Bureau's authority to enforce "compliance with any requirements imposed under this subchapter" under subtitle E of the CFPA.[94] Subtitle E of the CFPA, in turn, authorizes the Bureau to enforce compliance by "commenc[ing] a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief."[95] Put simply, the Bureau's complaint is an action to enforce "compliance" under § 814, which contains no statute of limitations, not an action to enforce "liability to [a] person" with respect to whom a violation has occurred, which would be subject to § 813(d)'s one-year limitation. Section 813's limitation provision, therefore, does not apply.

### B. The FDCPA's legislative history supports the conclusion that § 813's limitation is inapplicable to government actions.

That § 813 is inapplicable to government enforcement actions is also apparent from the FDCPA's legislative history. As described above, when it enacted the FDCPA, Congress distinguished between actions to enforce civil liability under § 813 and government enforcement actions under § 814. Legislative history makes clear that § 813 was designed to afford individual

---

[93] *See* Compl. ¶ 6.
[94] 15 U.S.C. § 1692*l*(b)(6).
[95] 12 U.S.C. § 5564(a); *see also* Compl. ¶ 6.

consumers a mechanism to recover damages for a debt collector's violations.[96] The Senate Report on the legislation noted specifically that under § 813, providing for "liability," "consumers who have been subjected to collection abuses will be enforcing compliance."[97] Section 814, on the other hand, was intended to deal not with debt collectors' "civil liability" to consumers, but rather the government's power to enforce the law, resulting in fines and other remedies.[98] The FDCPA's legislative history thus removes any doubt that Congress intended the one-year statute of limitations to apply only to private actions by consumers to collect damages.

### C.   Section 813 must not be construed so as to limit the government's right to enforce the FDCPA.

Even if this textual reading were not clear, principles of statutory construction would require the Court to read the statute in the Bureau's favor.[99] This canon is rooted in the traditional rule *quod nullum tempus occurrit regi* – time

---

[96] S. Rep. No. 382, 95th Cong., 1st Sess. at 5 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699-1700.

[97] *Id.*

[98] *Id.* at 1700 ("This legislation is enforced administratively primarily by the [FTC]. . . . All enforcement agencies are authorized to utilize all their functions and powers to enforce compliance. The [FTC] is authorized to . . . obtain restraining orders and seek fines in federal district court.").

[99] *See Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 391-92 (1984).

does not run against the King.[100] In the absence of a congressional enactment clearly imposing a limitations period, the United States, in its governmental capacity, is not subject to one.[101] Here, § 813's limitations period does not clearly impose a restriction on government enforcement actions, and therefore must not be construed to do so.[102]

The Eleventh Circuit has analyzed a similar statutory scheme and reached an equivalent result in decisions regarding the SEC's enforcement authority. The Securities Act of 1933 has distinct provisions for private actions and SEC enforcement actions.[103] It also has a separate provision relating to limitations.[104] The Eleventh Circuit has held that actions by the SEC are not subject to the limitations provision applicable to private actions because Congress did not expressly provide otherwise.[105]

---

[100] *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 95 (2006).

[101] *E. I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924).

[102] Defendants' final argument concerns the Bureau's authority to bring CFPA claims for conduct that occurred before the July 21, 2011 "designated transfer date." Mot. Dismiss 37-39. For clarity, the Bureau notes that it does not seek to enforce the CFPA as to conduct that occurred before that date.

[103] 15 U.S.C. §§ 77k, 77t.

[104] *Id.* § 77m.

[105] *SEC v. Diversified Corporate Consulting Grp.*, 378 F.3d 1219, 1224 (11th Cir. 2004); *SEC v. Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004).

Like the Securities Act, the FDCPA provides separately for private civil actions and administrative enforcement. [106] And as in the Securities Act, Congress did not specify a limitations period in the FDCPA's administrative enforcement provisions.[107] Further, as the Eleventh Circuit has said of the SEC when it sues in such actions, in suing to enforce the FDCPA and other "Federal consumer financial laws," the Bureau is vindicating public rights and furthering public interests. The FDCPA's limitations provision, like that in the Securities Act, should thus be interpreted as inapplicable to the Bureau's actions.

### D.   Even if the Court were to accept that § 813 legally applies, the Court should not rule on the issue here.

Even if the Court were to accept Defendants' reading of § 813, a ruling on statute of limitations grounds would be premature at this stage. Statute of limitations is an affirmative defense, the existence of which "will not support a motion to dismiss" unless the defense "clearly appears on the face of the complaint."[108] Even if the Bureau's FDCPA claims were subject to the one-year limitations period, there would be factual issues relating to what conduct would be actionable – including, for example, when the Bureau reasonably could have learned of its claims – that cannot be resolved from the face of the Complaint.

---

[106] 15 U.S.C. § 1692k (civil liability); *id.* § 1692*l* (administrative enforcement).
[107] *Id.* § 1692*l*; *id.* § 77t.
[108] *See Quiller*, 727 F.2d at 1069.

The Court should therefore leave this question for later, even if it were inclined to accept Defendants' view of the law.

## Conclusion

Congress has deemed it appropriate to hold debt-collection lawyers to the same standard as other debt collectors and financial-services providers, including when they engage in litigation activity with respect to consumers who are not their clients. The Bureau's Complaint seeks to do that, and Defendants have made no good argument for not allowing the Bureau's suit to proceed. The Court should therefore deny the Motion to Dismiss.

Respectfully Submitted,

ANTHONY ALEXIS
*Acting Enforcement Director*
JEFFREY PAUL EHRLICH
*Deputy Enforcement Director*
JOHN C. WELLS
*Assistant Litigation Deputy*
s/Lawrence D. Brown
LAWRENCE D. BROWN (TX Bar #24040586)
THOMAS G. WARD (IL Bar #6291011)
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone (Brown): 202-435-7116
Telephone (Ward): 312-610-8966
Facsimile: 202-435-7722
e-mail: lawrence.brown@cfpb.gov
e-mail: thomas.ward@cfpb.gov

SALLY QUILLIAN YATES
*United States Attorney*

LENA AMANTI
*Assistant United States Attorney*
Georgia Bar No.
666825
600 Richard B. Russell Federal Bldg.
75 Spring Street, SW
Atlanta, Georgia 30303
Telephone: 404-581-6225
Facsimile: 404-581-6163
e-mail: lena.amanti@usdoj.gov

**Certification of Compliance with L.R. 5.1B**

I hereby certify that the foregoing has been computer processed with 13-point Book Antigua font in compliance with the United States District Court for the Northern District of Georgia Local Rule 5.1B.

s/Lawrence D. Brown
Lawrence D. Brown

**Certificate of Service**

I certify that on October 3, 2014, I electronically filed Plaintiff's Response to Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record: Christopher J. Willis, Stefanie H. Jackman, and Christopher S. Anulewicz. Further, I certify that I have mailed this document, by U.S. Postal Service, to the following non-CM/ECF participant: Michael Bowers, Balch & Bingham, LLP, 30 Ivan Allen Jr. Blvd, N.W., Suite 700, Atlanta, Georgia 30308.

s/Lawrence D. Brown
Lawrence D. Brown
