**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>FREDERICK J. HANNA & ASSOCIATES, P.C., et al.,<br><br>Defendants. | ) | Civil Action No. 1:14-cv-02211-AT |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## I. INTRODUCTION

In bringing this action, the Bureau has gone well beyond the limits established by Congress in the Dodd-Frank Act. Specifically, the Bureau attempts to enforce two federal statutes in ways they have never been enforced, or pursuant to theories that lack support by any precedential decisions. When Defendants responded with a Motion to Dismiss ("Motion") arguing Congress never intended for those statutes to be applied in this novel fashion, the Bureau unfairly characterized Defendants as believing they were "beyond federal law." But it is the Bureau's claims that go well beyond federal law.

The Bureau alleges Defendants, who are attorneys, deceived consumers by

filing collection complaints that were not prepared with "meaningful" attorney involvement, in violation of the FDCPA and the CFPA. It also alleges Defendants violated these statutes by using client affidavits in these lawsuits when Defendants knew or should have known the affidavits misrepresented that they were based on personal knowledge. Both theories seek to impose new requirements on how Defendants perform essential litigation functions that Congress never intended.

One proof, of many, that Congress did not intend for the FDCPA and CFPA to be enforced in this manner is that Congress generally does not intend to interfere with how states regulate the practice of law. This principle is expressly enshrined in the CFPA's Practice of Law Exclusion, which clearly applies in this case notwithstanding the Bureau's unsupportable attempt to limit its application only to lawyers who represent consumers. The principle equally applies to the FDCPA claims insofar as it undermines the Bureau's attempt to expand the FDCPA's reach into areas of litigation practice that are, and have never been, covered by the law.

But the Bureau's claims suffer from more fundamental defects beyond their impermissible intrusion into the regulation of legal practice. The claim that complaints filed by Defendants lack "meaningful attorney involvement" is based on the faulty premise that the FDCPA and CFPA impose minimum levels of attorney involvement for all communications signed by an attorney. Those statutes,

however, only prohibit misrepresentations that deceive a consumer. "Meaningful attorney involvement" is a court-made requirement unique to collection letters based on the deceptive *impact* collection letters without sufficient attorney involvement have on consumers. The impact a complaint filed in court has on a consumer is in no way altered by the level of involvement of the lawyer who signed it. Hence, the level of attorney involvement cannot deceive the consumer, which is an essential element of the claim under the plain language of both the FDCPA and CFPA. This is why no standard for the requisite time and energy an attorney must spend on a complaint can be discerned from the text of these statutes or the applicable case law.

As for the claims regarding client affidavits, even after a year-long investigation of Defendants, the Bureau has not identified a single affidavit executed without personal knowledge, let alone one Defendants *knew* lacked personal knowledge. Even more, the Bureau has not identified a single fact to support its assertion the affiants lacked personal knowledge. Without any facts from which to draw the plausible inference that the thousands of affidavits executed by an unknown number of affiants lacked personal knowledge, the Bureau's allegations fail to state a claim.

Defendants have never contended they are beyond federal law. But they are

not subject to liability for claims that have no basis in the law, or are deficient because no facts are alleged to support them. It is for these reasons the Bureau's claims should be dismissed.

## II. <u>THE PRACTICE OF LAW EXCLUSION BARS THE CFPA CLAIMS</u>

### A. <u>The Text of the Exclusion Supports Its Application Here.</u>

The Bureau's only argument that the Practice of Law Exclusion, 12 U.S.C. § 5517(e), does not bar its CFPA claims is based on a "rule of construction" providing that the exclusion should not be construed to apply to a financial product or service "that is otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service," *id.* § 5517(e)(2)(B). The Bureau is wrong that § 5517(e)(2)(B), by its terms, "preserves" its authority over Defendants by limiting the exclusion to only attorneys who provide legal representation to consumers.

Contrary to the Bureau's suggestion, offering a financial product or service "with respect to any consumer" does not, under any reasonable reading, mean filing a breach of contract lawsuit against a consumer. The Bureau argues that because the CFPA defines financial services to include consumer debt collection, a lawsuit filed by Defendants against a consumer on a defaulted credit card account

is the same as providing a financial service "with respect to a consumer" and is therefore outside of the Practice of Law Exclusion. But, contrary to the Bureau's strained reading of this language, the rule of construction in § 5517(e)(2)(B) must be interpreted in the context of the Practice of Law Exclusion as a whole. *F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (the meaning of a statutory provision must be examined in context, not in isolation).

Congress worded the Practice of Law exclusion as a broad and sweeping curtailment of the Bureau's authority to regulate lawyers practicing law. The exclusion applies to activity "engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law." 12 U.S.C. § 5517(e)(1). There is no question that Defendants' litigation practices at issue in this case fall squarely within the scope of this language.[1] Yet the Bureau attempts to misread a "rule of construction" in the statute to drastically redefine the fundamental nature of the exclusion. The Bureau's first mistake is the view that § 5517(e)(2)(B) "preserves" its authority to prosecute Defendants. Subsection 5517(e)(2) does not provide preservations of authority, which are provided in §

[1] The Georgia Supreme Court explicitly held that Defendants' conduct at issue here, including their use of automated systems and non-attorneys, is the practice of law. *Doyle v. Frederick J. Hanna & Assocs., P.C.*, 287 Ga. 289, 291-92 (2010). Contrary to the Bureau's mischaracterization of Defendants' Motion, Defendants have never contended that *Doyle* excuses them from federal law.

5517(e)(3). Rather, Congress explicitly included § 5517(e)(2)(A) and (B) as "rules of construction" to help delineate the borders of the exclusion – i.e., what constitutes the "practice of law." Subsection 5517(e)(2)(A) notes the exclusion does not apply to a financial product or service that is not offered as part of, or incidental to, the practice of law occurring within the scope of the attorney-client relationship. Subsection 5517(e)(2)(B) adds that the exclusion does not apply to a product or service that "otherwise" is offered by an attorney "with respect to" a consumer that is not receiving legal advice from the attorney. Read in context, these rules of construction pertain to conduct on the fringe of what some may argue is "the practice of law." Neither provision operates to redefine "the practice of law" to exclude litigating breach of contract lawsuits on behalf of clients.

But even beyond this, the Bureau's textual argument suffers from a more fundamental flaw. The Bureau argues that, based on § 5517(e)(2)(B), the exclusion does not apply to Defendants because it "applies only to attorneys who provide legal advice or services to consumers." Pl.'s Response ("Resp.") 3. If Congress wanted to immunize only lawyers who represent consumers, however, it would not have enacted a broad, sweeping exemption, and then eliminated most of the exemption with an obliquely-worded "rule of construction." Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457,

468 (2001) (Congress does not alter a statute's primary function "in vague terms or ancillary provisions"). Furthermore, if the Bureau were correct that § 5517(e)(2)(B) limits the scope of the Practice of Law Exclusion to only lawyers who provide legal representation to consumers, then § 5517(e)(2)(A), which states the exclusion does not cover products or services provided outside the scope of the attorney-client relationship, would be wholly redundant and serve no purpose. "It is a cardinal principle of statutory construction" that a statute should not be interpreted to render any language "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

The Practice of Law Exclusion is drafted to cover traditional attorney-client representation, and not to cover attorney activity outside of that traditional role. The only reasonable reading of the exclusion is that it applies to Defendants' representation of their clients in litigation.

### B. <u>The Exclusion's Legislative History Supports Its Application Here.</u>

The Practice of Law Exclusion's legislative history puts to rest any doubt that it bars the Bureau's CFPA claims. The statements by the Chairman of the House Judiciary Committee, who was "instrumentally involved in shaping" the exclusion, clearly and succinctly confirm Congress's intent to exclude Defendants' litigation conduct from CFPA enforcement. 156 Cong. Rec. E1347, 1347 (July 15,

2010) (Rep. Conyers). First, they confirm that the primary objective of the exclusion is to avoid interference with the regulation of legal practice, which is performed by the states. *See id.* at E1349 (the exclusion "make[s] clear that the [Bureau] is not being given authority to regulate the practice of law, which is regulated by the State[s]").[2] This purpose is not served by limiting the Practice of Law Exclusion to only lawyers who represent consumers.

Second, the legislative history confirms that the Bureau may regulate consumer financial services that are not legal practice but happen to be provided by attorneys.[3] Congress was concerned "that attorneys can be involved in activities *outside the practice of law*, and might even hold out their law license as a sort of badge of trustworthiness." *Id.* at E1349 (emphasis added).[4] The Chairman expressly referred to the rules of construction in § 5517(e)(2) as providing "indicia" of whether an activity is part of, or incidental to, the practice law. *Id.* The

[2] *See also id.* (allowing the Bureau to regulate the practice of law would "undermine the authority of State supreme courts to effectively oversee and discipline lawyers" and "unavoidably conflict with the existing rules and lines of accountability").

[3] "Conceptually, the activities Congress intends to give the bureau authority to regulate – 'the offering or provision of a financial product or service' – are distinguishable from the practice of law." *Id.* at E1348.

[4] The exclusion ensures "that these outside activities not escape effective regulation simply because the person engaging in them is an attorney." *Id.*

Bureau's reading would turn these "indicia" of whether something is the practice of law into an exception that would swallow the broad rule that Congress created to preserve states' authority to regulate lawyers. Contrary to the Bureau's argument, § 5517(e)(2)(B) does not redefine the "practice of law" to exclude attorney-client representation in a lawsuit just because the lawyer is representing a client adverse to a consumer.

The Bureau's characterization of this legislative history as "focus[ing] on attorneys who provide legal services to consumers" is unjustified. Resp. 9. The sentence *immediately following* the Chairman's statement, quoted in the Bureau's response, that allowing the Bureau to regulate the practice of law would be harmful to consumer clients, adds: "But the harm would inevitably be far broader, extending into unrelated aspects of legal practice." 156 Cong. Rec. at E1349. To the extent there is any ambiguity in the Practice of Law Exclusion, the legislative history compels its application here.

### C. The Exclusion Must Be Construed Against Federal Regulation of Legal Practice.

As reflected in the legislative history, the regulation of the practice of law has traditionally been reserved to the states, not the federal government. Another reason any ambiguity should be resolved in favor of applying the exclusion to the Bureau's CFPA claims is the fundamental canon of construction that "if Congress

intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so 'unmistakably clear in the language of the statute.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). In denying the existence of a preference for state regulation of attorneys, the Bureau completely ignores the case that is likely the most on point. In *American Bar Association v. Federal Trade Commission*, the D.C. Circuit rejected the F.T.C.'s attempt to apply a federal statute to lawyers engaged in the practice of law. 430 F.3d 457, 472 (D.C. Cir. 2005). The court reasoned:

> It is undisputed that the regulation of the practice of law is traditionally the province of the states. Federal law "may not be interpreted to reach into areas of State sovereignty unless the language of the federal law compels the intrusion." . . . By now it should be abundantly plain that Congress has not made an intention to regulate the practice of law "unmistakably clear" in the language of the GLBA.

*Id.* at 471-72 (citations omitted).

Subsection 5517(e)(2)(B) does not make it "unmistakably clear" that Congress intended to authorize the Bureau to regulate lawyers litigating debt collection suits adverse to consumers. Rather, the Practice of Law Exclusion as a whole makes it is clear Congress did *not* intend give the Bureau such power.

Finally, the Bureau's bid to accord its interpretation *Chevron* deference can be easily dismissed. The interpretation cited by the Bureau is not contained in a final rule, but rather in comments accompanying the final rule. *See* 77 Fed. Reg.

65,775, at 65,784-85 (Oct. 31, 2012); *see also* 12 C.F.R. 1090.105 (silent as to the Practice of Law Exclusion). These comments lack the force of law; therefore, *Chevron* does not apply. *See In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 273 (E.D.N.Y. 2007) (preamble accompanying final rule not entitled to *Chevron* deference); *Goldman v. Hartford Life & Acc. Ins. Co.*, 417 F. Supp. 2d 788, 803 (E.D. La. 2006) (interpretation found in comments accompanying proposed and final rules not entitled to *Chevron* deference because it lacks the force of law); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (interpretations in opinion letters and policy statements lack the force of law and do not warrant *Chevron* deference).

Even if *Chevron* were implicated, the Bureau's interpretation should not be accorded deference because the statute unambiguously bars the CFPA claims here, and the Bureau's interpretation is inconsistent with the plain language of the statute. *See Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2040 (2012) (refusing to accord agency's interpretation because it was not supported by the statute); *Christensen*, 529 U.S. at 586-87 (*Chevron* deference is accorded only to an agency's "reasonable interpretation of an ambiguous statute").

## III. THE "MEANINGFUL ATTORNEY INVOLVEMENT" ALLEGATIONS FAIL TO STATE A CLAIM

### A. The Allegations Fail to State an FDCPA Claim.

The Bureau alleges Defendants violated the FDCPA by "representing to consumers that their debt-collection suits were from attorneys when, in fact, attorneys were not meaningfully involved in preparing or filing them." Resp. 17. The FDCPA, however, does not set forth a minimum level of attorney involvement in all aspects of legal practice involving debt collection. It prohibits using misrepresentations in collecting a debt, and specifically prohibits "[t]he false representation or implication . . . that any communication is from an attorney." 15 U.S.C. § 1692e(3). Alleging complaints filed by Defendants lacked "meaningful attorney involvement," whatever that phrase means, is not a substitute for alleging Defendants misrepresented the complaints were from an attorney (which they unquestionably were). Defendants' Motion challenged the Bureau to identify any standard set forth in the FDCPA or the case law that establishes the minimum level of "attorney involvement" in preparing complaints necessary for a complaint not to misrepresent it is "from an attorney." The Bureau has failed to do so, because no such standard exists.

The Bureau argues meaningful attorney involvement in complaints is compelled by the text of § 1692e(3) because a complaint constitutes a "communication." This assumes, without any support, that all communications signed by an attorney that lack "meaningful attorney involvement" are *per se*

misleading under the FDCPA. That is not the case. The theory that a minimum level of attorney involvement is required to avoid misrepresenting a communication is from an attorney has only been recognized by federal courts of appeal in the context of mass-produced collection letters. The courts of appeal universally reasoned that a collection letter from an attorney represents to a consumer that the attorney is involved in the consumer's case and litigation is imminent. Consumers will therefore be more intimidated by an attorney collection letter than by a non-attorney letter. Consequently, attorneys must be "meaningfully involved" in reviewing the consumer's account and preparing the letter in order to avoid misrepresenting it is "from an attorney." *E.g.*, *Avila v. Rubin*, 84 F.3d 222, 228 (7th Cir. 1996); *see also* Motion 16-17 (collecting cases). The same does not hold true for a complaint filed in court, which leaves no question an attorney is involved in the consumer's case and litigation has been initiated. This is no doubt why meaningful attorney involvement in a complaint has never been recognized by a court of appeals as a requirement under the FDCPA.

The Bureau next argues the standard for collection letters ought to be applied here because § 1692e(3) must be interpreted consistently regardless of the type of communication. Again, the Bureau obfuscates the key issue. Section 1692e(3) prohibits misrepresentations, it does not prescribe a general "attorney

involvement" standard. The *impact* the communication has on the consumer is determinative. *See Tourgeman v. Collins Fin. Servs., Inc.*, No. 08cv1392, 2012 WL 3731807, at *6 (S.D. Cal. Aug. 29, 2012), *reversed on other grounds by* 755 F.3d 1109 (9th Cir. 2014) ("The task for the Court therefore, is not to assess the quality of the attorney's involvement, as Plaintiff suggests, but rather to consider whether the recipient of the letter would be misled by the fact it was signed by an attorney."). That is why numerous courts hold that attorney collection letters lacking meaningful attorney involvement do *not* violate § 1692e if they include a disclaimer that there has been no attorney evaluation of the case, because it eliminates the suggestion that litigation is imminent. *E.g.*, *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364-65 (2d Cir. 2005).[5] "Meaningful attorney involvement" is a court-made standard unique to collection letters. There is no inconsistency in reading that standard into the FDCPA as it applies to collection

---

[5] *See also, e.g.*, *Eddis v. Midland Funding, L.L.C.*, No. 11-3923, 2012 WL 664812, at *8-9 (D.N.J. Feb. 28, 2012); *Taylor v. Pinnacle Credit Servs., LLC*, No. 10-5164, 2011 WL 1303430, at *10 (N.D. Cal. Apr. 4, 2011); *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913, 923 (N.D. Ohio 2011); *Walsh v. Frederick J. Hanna & Assocs., P .C.*, No. 10-2720, 2010 WL 5394624, at *3 (E.D. Cal., Dec. 21, 2010).; *cf. Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009).

letters but not as it applies to complaints, because there is no risk a consumer against whom a complaint is filed would be misled by the fact an attorney signed the complaint or the fact a lawsuit has been filed against the consumer.

The Bureau's only suggestions of how a complaint signed by an attorney that lacked "meaningful attorney involvement" could deceive a consumer similarly to a collection letter are too far-fetched and illogical to be given any weight. The Bureau contends a consumer may give "more credence" to an allegation in a complaint if it is from an attorney, which would likely alter his "decision to settle, retain a lawyer, or even show up to court." Resp. 26-27. But in Georgia, as in all jurisdictions, only counsel may represent a corporate entity (such as a consumer creditor) in court. *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985); *Eckles v. Atlanta Tech. Grp.*, 267 Ga. 801, 804-05 (1997). Thus, there can never be a collection complaint not filed by a lawyer. Further, the ramifications of a lawsuit do not change depending on whether an attorney has signed a complaint – the plaintiff must prove its case, and the defendant must defend or risk default judgment. The Bureau's hypotheticals do not satisfy the plausibility standard of Fed. R. Civ. P. 8(a).

Conceding that no courts of appeal have applied a meaningful attorney involvement standard to complaints, the Bureau relies on a small handful of district

court cases. None of those cases are from this Circuit, and all but one simply relied on collection letter cases without considering whether complaints have the same *misleading impact*. In the only case to address the fundamental differences between complaints and collection letters, *Bock v. Pressler and Pressler, LLP*, the court recognized that once a lawsuit is filed "the danger of debtors' being intimidated by unfounded legal claims is diminished if not eliminated." No. 11-7593, 2014 WL 2937929, at *12 (D.N.J. June 30, 2014). After raising the "good question" of whether a lawsuit "*should* be considered a proper subject of regulation under the FDCPA," the court neglected to resolve it, instead simply reasoning the text of § 1692e(3) is broad enough to encompass a complaint. *Id.* As addressed above, however, the meaningful attorney involvement standard is not found in the text of § 1692e, it is a court-made standard unique to collection letters. This much was confirmed in *Taylor v. Quall*, 471 F. Supp. 2d 1053, 1061 (C.D. Cal. 2007), a case not cited in *Bock*, which held the "limited holdings" related to mass mailing of collection letters do not provide a "general standard under the FDCPA for adequate attorney involvement in debt collection actions." Even the *Bock* court acknowledged "[t]he case law is sparse, and it is possible for reasonable people to disagree as to what constitutes reasonable attorney review" of a complaint. 2014 WL 2937929, at *2. Thus, the few cases cited by the Bureau, which are not binding

on this court, either rely on the same unsound reasoning urged by the Bureau, or lack any reasoning at all. Accordingly, they offer little, if any, persuasive value.

The lack of any prescribed standard for attorney involvement in complaints presents another critical problem with the Bureau's claim. Assuming *arguendo* the FDCPA requires *some* level of attorney involvement in preparing complaints, what is the minimum level of involvement? It is impossible to answer this question without becoming inextricably intertwined with the rules that govern attorney practice prescribed by the state supreme courts and state procedural rules, such as O.C.G.A. § 9-11-11(a), which provides that by signing a pleading, an attorney certifies that she has read the pleading and does not submit it to cause delay. Congress never intended for the FDCPA to interfere with how states regulate the practice of law in this way. Had it so intended, it would have made that intention "unmistakably clear" in the text of the FDCPA. *Am. Bar Ass'n*, 430 F.3d at 471-72.

The Bureau argues Congress intended for the FDCPA to preempt state ethics and procedural rules by establishing a meaningful attorney involvement standard for complaints, and cites *Heintz v. Jenkins*, 514 U.S. 291 (1995). As addressed in Defendants' Motion, *Heintz* did not apply the FDCPA to core litigation practices. *See Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818 (8th Cir. 2012) (*Heintz* found the FDCPA applies to lawyers who regularly collect consumer debts

through litigation, but did not hold a lawyer's representations in court filings can violate §§ 1692d-f).[6] The FDCPA does not reflect Congress's "unmistakably clear" intent to regulate the amount of time or effort an attorney must put forth in preparing a complaint filed in state court. Accordingly, the statute should not be interpreted as containing such a requirement.

### B. The Allegations Fail to State a CFPA Claim.

The Bureau also alleges the lack of meaningful attorney involvement constitutes deceptive conduct in violation of the CFPA, 12 U.S.C. § 5536(a)(1)(B). In addition to being barred by the Practice of Law Exclusion, this claim fails for the same reasons the FDCPA claim fails. No "meaningful attorney involvement" requirement can be gleaned from the text of the CFPA. The Bureau assumes without citing any support that § 5536(a)(1)(B) incorporates the "meaningful attorney involvement" standard in the FDCPA. Resp. 25. Because the FDCPA contains no such standard, and for the reasons stated in the Motion, the CFPA claim should also be dismissed.

## IV. THE AFFIDAVITS ALLEGATIONS FAIL TO STATE A CLAIM

---

[6] *See also O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 944 (7th Cir. 2011) (FDCPA does not prohibit court filings that deceive the court); *Bandy v. Midland Funding, LLC*, No. 12-491, 2013 WL 210730, at *6 n.6 (S.D. Ala. Jan 18, 2013) ("The Court is doubtful that the FDCPA applies to state court litigation.").

### A. <u>The Allegations Do Not Satisfy Fed. R. Civ. P. 9(b).</u>

Defendants' Motion sets forth, with supporting case law, why the heightened pleading standard of Rule 9(b) applies to the Bureau's claims under the FDCPA and the CFPA that Defendants used deceptive and unfair means to collect debts by using client affidavits in support of collection suits that Defendants knew or should have known falsely claimed to be made with personal knowledge. *See* Motion 26 (citing FDCPA cases); and 31 n.11 (citing FTC Act cases). The Bureau concedes the Eleventh Circuit has not weighed in on Rule 9(b)'s applicability to either statute, but it has no response to the argument that the purposes of the heightened pleading standard are met by applying it here. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (averments of fraud must be pleaded with particularity to give adequate notice of the alleged misconduct and to protect against reputational harm). When, as in this case, the federal government brings accusations that even *imply* dishonesty, the need to protect a defendant's reputation is especially pronounced. *F.T.C. v. Cantkier*, 767 F. Supp. 2d 147, 155 (D.D.C. 2011). The Court, therefore, should apply Rule 9(b).

The Bureau argues it has alleged its claims with particularity, and then sets forth a list of generalizations not supported by any facts in the Complaint. Resp. 31-32. The Complaint does not even identify a single affidavit made without

personal knowledge, let alone one Defendants knew lacked personal knowledge. This does not satisfy Rule 9(b). *See, e.g.*, *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311-12 (11th Cir. 2002) (detailed allegations of alleged scheme to submit fraudulent claims failed to satisfy 9(b) where plaintiff failed to identify a single claim actually submitted pursuant to the scheme).

**B. <u>The Allegations Do Not Satisfy The Plausibility Standard.</u>**

Given the Bureau's comprehensive, year-long investigation of Defendants, it is extremely telling that it has not alleged a single fact to support its conclusory allegations that "the affiants did not have the personal knowledge they asserted" or that some of Defendants' clients "could not support their collection activities with basic documents." Resp. 31. The Complaint fails to identify any particular affiant or client, or why Defendants should have known any of this. The Bureau responds only that *Twombly* and *Iqbal* do not require such factual support. But the Supreme Court has expressly held that "naked assertions devoid of further factual enhancement" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Contrary to the Bureau's argument, its Complaint contains no more factual support than the complaint dismissed in *Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1164, 1169 (D. Minn. 2013) (complaint lacked factual support for allegation that affiants lacked personal knowledge, like, for instance, an affiant

executed impossible number of affidavits). Furthermore, without alleging any facts to suggest the affidavits were not objectively reasonable, the Bureau has no grounds to challenge Defendants' entitlement, as a matter of law, to rely on those affidavits. *See* Motion 30-31 (collecting cases holding collection attorneys are entitled to rely on objectively reasonable client affidavits). For the foregoing reasons, these claims should also be dismissed.

## V. INFRINGEMENT UPON FIRST AMENDMENT RIGHTS

Defendants will not repeat the arguments in their Motion regarding First Amendment immunity, but must address two points in the Bureau's Response. First, the Bureau is incorrect that First Amendment immunity is unavailable here, regardless of whether the sham litigation exception applies, because the Bureau alleges misrepresentation by Defendants. The case cited for this proposition involved allegations a hospital violated antitrust laws by submitting false information to a government agency reviewing a competitor's application, which the agency relied on in denying the application. *St. Joseph's Hosp., Inc.v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). Thus, the case is factually inapposite, and Defendants enjoy immunity unless the Bureau can satisfy *both* prongs of the sham litigation exception. Second, the Bureau's attempt to distinguish *Hemmingsen* on the basis that it was a summary judgment decision

misses the point. *Hemmingsen* reveals that First Amendment immunity applies to FDCPA claims alleging misrepresentation in court documents. 674 F.3d at 819-20. Accordingly, the Bureau must plead facts to show the sham litigation exception applies, which it has not.

## VI. VIOLATION OF EQUAL PROTECTION RIGHTS

Defendants must also briefly address the Bureau's response to Defendants' Equal Protection challenge. The Equal Protection violation arises because non-debt collection lawyers in Georgia may file complaints in state court so long as they have read the complaint and it is not filed to cause delay, O.C.G.A. § 9-11-11(a), but the Bureau's meaningful attorney involvement theory imposes further requirements on debt-collection lawyers. Moreover, non-collection attorneys are prohibited by the Georgia ethics rules from "knowingly" filing false client affidavits, Ga. R. Prof. Conduct 3.3, whereas the Bureau alleges Defendants violated federal law based on negligence in policing clients' execution of affidavits, as the Complaint alleges Defendants knew "or should have known" the affidavits were made without personal knowledge. Compl. ¶ 23. The right at issue here is the right to petition the court for redress, a fundamental right guaranteed by the First Amendment, not the right to practice law, as the Bureau argues. Strict scrutiny therefore applies.

## VII. FDCPA CLAIMS ARE SUBJECT TO A ONE-YEAR STATUTE OF LIMITATIONS

The plain language of the FDCPA could not be more clear that *all* claims under the FDCPA are subject to a one-year limitations period: "An action to enforce any liability created by this subchapter [i.e., the FDCPA] may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Bureau, however, contends its FDCPA claims are not subject to any statute of limitations because "liability" in § 1692k(d) only refers to liability to private litigants, not the government. The Bureau proposes it is not seeking to enforce "liability" against Defendants, but rather merely to enforce "compliance" pursuant to § 1692*l*, which contains no statute of limitations. The obvious flaw in this strained interpretation is that the Bureau seeks relief for the alleged FDCPA violations, including damages, restitution, monetary penalties, and injunctive relief, all of which are unequivocally "liabilities" created by the FDCPA. Compl. at 13. Furthermore, the Bureau's attempt to analogize the FDCPA's limitations period with that of the Securities Act of 1933 suffers from the obvious defect that the statute of limitations in the Securities Act *is expressly limited to the private cause of action provisions*. *See* 15 U.S.C. § 77m (setting one-year limitations period for actions under §§ 77k or 77*l*(a)(2), which authorize private actions). The FDCPA statute of limitations contains no such restriction.

The Bureau cannot escape the clear, plain language of § 1692k(d). Because there is no ambiguity in § 1692k(d), the Court need not consider the Bureau's cited legislative history, which does not advance its position in any event. *See Barnhill v. Johnson*, 503 U.S. 393, 401 (1992) (courts only look to legislative history to "resolve statutory ambiguity"). Similarly, the Bureau cannot invoke the canon "time does not run against the King" because that rule only applies to resolve ambiguity. *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 95-96 (2006).

Finally, the Court may dismiss time-barred claims at this juncture. The Complaint, on its face, seeks to impose liability for conduct from 2009 to 2013. Compl. ¶ 13. Therefore, time-barred claims are subject to a motion to dismiss. *Ctr. for Bio. Diversity v. Hamilton*, 385 F. Supp. 2d 1330, 1334 (N.D. Ga. 2005). There need not be any evidentiary consideration of "when the Bureau reasonably could have learned of its claims," Resp. 39, because the "discovery rule" does not apply to claims under the FDCPA. *E.g.*, *Crossman v. Asset Accept., L.L.C.*, No. 14-115, 2014 WL 2612031, at *6 (M.D. Fla. June 11, 2014). Accordingly, the FDCPA claims based on conduct before July 14, 2013 should be dismissed as time-barred.

## VIII. <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing the Complaint with prejudice.

Respectfully submitted this 24th day of October, 2014.

*/s/ Christopher J. Willis*
Christopher J. Willis, Ga. Bar No. 766297
willisc@ballardspahr.com
Stefanie H. Jackman, Ga. Bar No. 335652
jackmans@ballardspahr.com
BALLARD SPAHR LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309-5915
Telephone (404) 678-9300
Facsimile: (404) 678-9301

Michael Bowers, Ga. Bar No. 071650
mbowers@balch.com
Christopher S. Anulewicz, Ga. Bar No. 020914
canulewicz@balch.com
BALCH & BINGHAM LLP
30 Ivan Allen Jr. Blvd., NW, Suite 700
Atlanta, Georgia 30308

*Counsel for Defendants*

**CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B**

I hereby certify that the foregoing has been computer processed with 14 point New Times Roman font in compliance with the United States District Court for the Northern District of Georgia Local Rule 5.1B.

Dated: October 24, 2014

*/s/ Christopher J. Willis*
Christopher J. Willis
Ga. Bar No. 766297

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I served the foregoing REPLY IN SUPPORT OF MOTION TO DISMISS with the Clerk of Court using the CM/ECF system which will automatically serve the following parties:

Lawrence Brown (Lawrence.Brown@cfpb.gov)
Thomas Ward (Thomas.Ward@cfpb.gov)
Consumer Financial Protection Bureau
ATTN: Enforcement
1750 Pennsylvania Ave., 10th Floor
Washington, D.C. 20552

Respectfully submitted this 24th day of October, 2014.

*/s/ Christopher J. Willis*
Christopher J. Willis, Ga. Bar No. 766297
willisc@ballardspahr.com

*Counsel for Defendants*