**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Frederick J. Hanna & Associates, P.C., Frederick J. Hanna, individually, Joseph C. Cooling, individually, and Robert A. Winter, individually,<br><br>Defendants. | **Civil Action No. 1:14-cv-02211-AT** |

**REPLY IN SUPPORT OF MOTION TO CERTIFY FOR INTERLOCUTORY REVIEW**

Defendants Frederick J. Hanna & Associates, P.C., Frederick J. Hanna, Joseph C. Cooling, and Robert A. Winter (collectively, "Hanna") file this Reply in Support of their Motion to Certify for Interlocutory Review (Dkt. No. 45). Hanna seeks certification of the Court's Order Denying Hanna's Motion to Dismiss (Dkt. No. 43) under 28 U.S.C. § 1292(b) because the Order involves complex and novel questions of law as to which substantial differences of opinion exist.

The CFPB raised two arguments against certification: 1) it would not materially advance the litigation; and 2) substantial grounds for difference of opinion are not present. Neither argument has merit. Appellate review of the Order would materially advance this litigation, and would even have the potential to end it. Hanna sought to dismiss the CFPB's entire complaint. If the Eleventh Circuit holds that the complaint should have been dismissed, certification would have not only advanced resolution of the litigation, but ended it completely. Alternatively, if the Eleventh Circuit declines to dismiss the case entirely but holds that a shorter statute of limitations applies, or otherwise narrows the scope of the CFPB's claims, such a holding would significantly narrow the scope of the issues for discovery, motion practice, and trial.

Additionally, substantial grounds for differences of opinion exist with respect to the issues raised in the motion to dismiss. While the Court largely resolved those issues in the CFPB's favor, throughout the Order, the Court also detailed the arguments supporting Hanna's position. The Court further acknowledged that courts are split on some key issues raised in the Order, including whether the meaningful attorney involvement line of cases applies to the filing of a lawsuit in state court civil proceedings. The split between courts on

these issues demonstrates that there are significant grounds for differences of opinion.

Thus, for the reasons set forth in the Motion to Certify and in this Reply, Hanna respectfully requests that the Court certify the Order Denying Hanna's Motion to Dismiss for interlocutory review under section 1292(b).

## I. Interlocutory Review Would Materially Advance the Litigation.

The CFPB's main argument against interlocutory review is that it would not materially advance the resolution of this matter. For the CFPB to be correct, the Court would have to accept two arguments: 1) that different standards for meaningful attorney involvement apply under the FDCPA and CFPA; and 2) that interlocutory review would only meaningfully advance the litigation if it resolved all claims. Neither argument has support.

### A. The Same Standard for Meaningful Attorney Involvement Applies under the FDCPA and CFPA.

The CFPB's argument that none of the issues Hanna raised "address *both* the FDCPA and the CFPA" turns on the CFPB’s assertion that resolution of the meaningful attorney involvement claims under the FDCPA "would not necessarily foreclose the Bureau's CFPA claims related to meaningful attorney involvement."

(Dkt. No. 49, 4.) However, for this to be true, different rules would have to apply for meaningful attorney involvement under the FDCPA and CFPA.

The CFPB does not explain how conduct could violate meaningful attorney involvement standards under the FDCPA but not the CFPA, or vice versa. In fact, the CFPB actually alleges the exact opposite in connection with its CFPA claim. Specifically, the CFPB alleges that Hanna's "FDCPA violations, described in Count I, constitute violations of section 1036 of the CFPA." (Dkt. No, 1, ¶ 33.) The CFPB also incorporates exactly the same factual allegations into both counts. (Dkt. No. 1, ¶¶ 27, 31.) Thus, even if conduct could theoretically violate meaningful attorney involvement standards under one statute but not the other, the CFPB does not allege such conduct here.

Assuming that the meaningful attorney involvement standard is the same for the FDCPA and CFPA, at least according to the CFPB's allegations, appellate review would materially advance the litigation. If the CFPB's meaningful attorney involvement claim is dismissed, this case will be much simpler. The meaningful attorney involvement claims involve complex and novel questions of fact and law. Discovery will involve expert witnesses, as well as sensitive questions of attorney-client privilege and the work-product doctrine. Specifically, the attorney-client

"privilege belongs to the client," *Spence v. Hamm*, 487 S.E.2d 9, 11 (Ga. Ct. App. 1997), and "[a] majority of courts have ruled that a document created by an attorney belongs to the client who retained them." *Swift, Currie McGhee & Heirs v. Henry*, 581 S.E.2d 37, 39 (Ga. 2003). Additionally, State Bar rules require Hanna to "maintain in confidence all information gained in the professional relationship with a client . . . ." Ga. Bar R. 1.6(a). This obligation is broader than the attorney-client privilege, and carries very serious penalties if it is violated: "The maximum penalty . . . is disbarment." Ga. Bar. R. 1.6.

In contrast, if the meaningful attorney involvement claims are dismissed, the majority of these difficult discovery issues will be avoided. As the CFPB concedes, the only remaining issue would be whether Hanna knowingly submitted affidavits for which the affiant did not have personal knowledge. Determining whether affiants had sufficient personal knowledge to submit an affidavit is a much simpler inquiry, and carries a much lower risk of invading the attorney-client privilege or work-product doctrine during discovery.

**B. Interlocutory Review Will Materially Advance Resolution of this Matter, Even If Some Claims Remain.**

In its response, the CFPB goes issue by issue, and argues that resolution of each individual issue will not necessarily end the case. There are two problems

with this approach. First, the entire order would be reviewed on appeal, not isolated issues. *See Harris v. Luckey*, 918 F.2d 888, 892 (11th Cir. 1990) ("the jurisdiction of this court is not confined to the precise question certified by the district court because the statute presents the 'order' to us, not merely the question."); *see also United States v. Phillip Morris U.S.A., Inc.*, 396 F.3d 1190, 1195 (D.C. Cir. 2005) ("We know of no such general policy that the particular issue addressed has to have been raised in the particular motion. Rather, we understand our general policy to be following the instructions of the Supreme Court that we are to address any issue fairly included within the certified order.") internal quotation marks omitted.)

Second, the "materially advance" standard does not require that interlocutory review *will necessarily* end the litigation. Instead, "[1292(b)] requires an 'order' from the district court that is directly associated *with the disposition of at least a claim*, if not the entire case itself." *Id.* (emphasis added). This standard is met here. Hanna moved to dismiss the CFPB's entire complaint; it did not seek partial dismissal. The Order denying the motion is therefore "directly associated with the disposition of . . . the entire case itself," *id*, because granting the motion would have terminated the entire case. And if the Eleventh Circuit reverses the

order in its entirety, the litigation will be terminated in Hanna's favor. Thus, the "materially advance" requirement is satisfied.

Alternatively, even if the Eleventh Circuit does not reverse the Order in its entirety, an interlocutory appeal still will materially advance the resolution of this litigation. As the Eastern District of Pennsylvania has held, "[a]n interlocutory appeal materially advances litigation if it (1) eliminates the need for trial, (2) eliminates complex issues so as to simplify the trial, or (3) eliminates issues to make discovery easier and less costly." *Hess v. A.I. DuPont Hosp. for Children*, No. 08-0229, 2009 WL 2776606 at *4 (E.D. Pa. Aug. 28, 2009). This standard is met when "granting Defendants' Petition will result in *either* dismissal *or* clarification of the law to be applied at trial, which in turn will simplify the administration of the trial and reduce the likelihood of a post-trial appeal." *Id.* (emphasis added).

This standard is met even if the Eleventh Circuit only rules in Hanna's favor on some issues, or even no issues. For example, appellate review could simplify the litigation in the following manner:

1) As noted above, if the meaningful attorney involvement standard does not apply to the filing of a lawsuit in state court civil proceedings, only the affidavit issue would remain;
2) If the practice-of-law exclusion bars the CFPB's CFPA claims and a one-year statute of limitations applies to the FDCPA claims, the CFPB's claims would be limited to one year, thereby significantly reducing discovery;
3) If the Eleventh Circuit rejects all of Hanna's arguments but provides clarity on the meaningful attorney involvement standard for the filing of a lawsuit in state court civil proceedings, discovery, motions practice, and – if necessary – trial will be simpler and more manageable.

Thus, even if appellate review does not terminate the litigation, such review will still benefit the parties and the Court because they will have appellate guidance on the scope of the practice-of-law exclusion, the standard that applies to meaningful attorney involvement for litigation activity, and the statute of limitations governing FDCPA claims. Discovery, motions practice, and trial could then be tailored to the appellate court's opinion.

The alternative is a lengthy, difficult discovery period followed by another complex round of dispositive motions. And if the case is not resolved on summary judgment, a complex round of pre-trial motions, followed by a trial. Then, there would be a significant risk of the entire effort being voided on appeal if the Eleventh Circuit sends the case back for resolution under a different set of rules. It is more efficient to certify the Order Denying Hanna's Motion to Dismiss for interlocutory review at this time then to wait until the conclusion of the case, both for the Court and the parties. *See Hess*, 2009 WL 2776606 at *4.

## II. **Substantial Differences of Opinion Exist With Respect to the Application Of The Meaningful Attorney Involvement Standard; the Scope of the Practice of Law Exclusion; and the Statute of Limitations for the FDCPA Claims.**

The Court's Order discusses thoroughly the arguments supporting Hanna's and the CFPB's positions with respect to whether the CFPB's meaningful attorney involvement standard is applicable to the circumstances of this case. Indeed, the Order itself shows that reasonable minds could differ on the outcome. (Dkt. No. 43, 41-45.)

Although the CFPB tries to minimize the disagreement, even it acknowledges that lower courts are split on whether meaningful attorney

involvement standards apply to filing a lawsuit. In fact, the CFPB admits that a recent Maryland appellate decision supports Hanna's position. (Dkt. No. 49, 7-8.) Hanna likewise conceded that some lower court opinions support the CFPB's interpretation. (Dkt. No. 45, 3-4.) No circuit courts have decided the issue, and the only state appellate court that has decided it supports Hanna's position. *See Mostofi v. Midland Funding*, LLC, -- A.3d --, No. 1084, 2015 WL 4067882, at *10 (Md. Ct. App. July 2, 2015). Thus, because courts have divided on this issue in recent cases, substantial grounds for difference of opinion exist. *See Harris*, 918 F.2d at 892-93 (holding that substantial differences of opinion existed in a case where both parties had support for their positions).

With respect to the practice-of-law exclusion, the CFPB dismisses any notion that substantial differences of opinion exist because the Court ruled in its favor. (Dkt. No. 49, 6-7.) But the Court's Order also discusses how the meaning of the statute changes drastically depending on what the word "otherwise" and phrase "the attorney in question" of 12 U.S.C. § 5517(e)(2)(B) modify. The Court also drew a graphic demonstrating how the meaning of the statute changes, likely because the statute is awkwardly worded. (Dkt. No. 43, 16.) And even though the Court ultimately held that the language of the statute supports the CFPB's argument, Hanna has put forth a contrary position that is also supported by the text

and purpose of the statute, and identified legislative history and policy arguments supporting that position. There is therefore substantial ground for differences of opinion, even though the Court, on a matter of first impression, adopted a different reading.

Finally, with respect to the statute of limitations, the Court surveyed the competing arguments in detail, and was not able to reach a decision. The Order thus demonstrates on its face that substantial grounds for differences of opinion are present with respect to this issue. The CFPB claims that the statute of limitations is not ripe for appellate adjudication, because the Court did not reach a final resolution of it. But the full order will be before the Eleventh Circuit, not just this issue. *See Harris*, 918 F.2d at 891 (holding that an entire order, not an individual issue, is before the court on a 1292(b) certification). There is therefore no reason that the Eleventh Circuit could not decide this issue, in conjunction with considering the entire Order. Upon resolution on appeal, the case will be either dismissed in full or remanded to this Court for resolution with the benefit of the Eleventh Circuit's guidance on the complex and novel issues raised by the parties in connection with the motion to dismiss.

## Conclusion

As the Court's Order demonstrates, this case involves complex issues, many of which present questions of first impression. Had Hanna's motion to dismiss been granted, the litigation would have been concluded. And if the Eleventh Circuit holds that the CFPB's claims should have been dismissed, the case will be terminated. Alternatively, even if the Eleventh Circuit does not dismiss any of the CFPB's claims, the parties and the Court would benefit from interlocutory review. Discovery, motions practice, and a potential trial would be far simpler and more manageable. Hanna therefore requests that its Motion be granted, and the Order Denying its Motion to Dismiss be certified for interlocutory appellate review.

Respectfully submitted September 11, 2015.

/s/ Christopher J. Willis
Christopher J. Willis, GA Bar No. 766297
willisc@ballardspahr.com
Stefanie H. Jackman, GA Bar No. 335652
jackmans@ballardspahr.com
Daniel Delnero, GA Bar No. 347766
delnerod@ballardspahr.com
BALLARD SPAHR LLP
999 Peachtree Street, Suite 1000
Atlanta, GA 30309-5915
Telephone (404) 678-9300
Facsimile: (404) 678-9301

*Counsel for Defendants*

**CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B**

I hereby certify that the foregoing has been computer processed with 14 point Times New Roman font in compliance with the United States District Court for the Northern District of Georgia Local Rule 5.1B.

Dated: September 11, 2015

*/s/ Christopher J. Willis*
Christopher J. Willis
Ga. Bar No. 766297

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I filed the foregoing REPLY IN SUPPORT OF MOTION TO CERTIFY FOR INTERLOCUTORY REVIEW with the Clerk of Court using the CM/ECF system which will automatically serve the following parties:

Lawrence Brown (Lawrence.Brown@cfpb.gov)
Thomas Ward (Thomas.Ward@cfpb.gov)
Consumer Financial Protection Bureau
ATTN: Enforcement
1750 Pennsylvania Ave., 10th Floor
Washington, D.C. 20552

Dated: September 11, 2015

*<u>/s/ Christopher J. Willis</u>*
Christopher J. Willis
Georgia Bar No. 766297

*Counsel for Defendants*