IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CONSUMER FINANCIAL | : | |
| PROTECTION BUREAU, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FREDERICK J. HANNA & | : | CIVIL ACTION NO. |
| ASSOCIATES, P.C, et al., | : | 1:14-CV-2211-AT |
| | : | |
| Defendants. | : | |

## **ORDER**

The Consumer Financial Protection Bureau ("Bureau") filed this lawsuit against the collections law firm Frederick J. Hanna & Associates, P.C. and its principal partners (together, "Defendants"), alleging that Defendants file tens of thousands of collections lawsuits a year against consumers without any of the firm's attorneys being meaningfully involved in the decision to sue the defendant-consumers, or in the preparation of pleadings in those suits.  (Compl. ¶¶ 13-17.) The Bureau also alleges that Defendants used affiants to establish the validity and ownership of the debts underlying the collection lawsuits, but that Defendants knew or should have known that many of these affiants lacked personal knowledge of the facts that they testified to.  (Compl. ¶¶ 23-24.)  This conduct, the Bureau argues, violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(3) and (10), and the Consumer Financial Protection Act

("CFPA").  12 U.S.C. § 5536(a)(1)(A).  Defendants filed a Motion to Dismiss this suit (Doc. 20), arguing, among other things, that the alleged lack of meaningful attorney involvement in the preparation and filing of collection lawsuits did not state a claim under the FDCPA or CFPA, and that the CFPA contained a "practice-of-law exclusion" that barred the Bureau's claims against attorneys like Defendants under that statute.

The Court denied Defendants' Motion to Dismiss, holding that the Bureau's meaningful attorney involvement theory was supported by United States Supreme Court and Eleventh Circuit precedent applying the FDCPA (and by implication, the CFPA) to attorneys' litigation activities, and that the plain language of the CFPA did not bar suits against Defendants because the CFPA's practice-of-law exclusion was largely meant to protect consumers' attorneys, not collection attorneys.  (Doc. 43) ("Order.")

Defendants have now filed a Motion to Certify for Interlocutory Review [Doc. 45] under 28 U.S.C. § 1292(b).  They seek this Court's certification of three issues to the Eleventh Circuit:

(1)  The application of the meaningful attorney involvement rule to the preparation and filing of pleadings;

(2)  the scope of the CFPA's practice-of-law exclusion; and

(3)  the relevant statute of limitations to apply to the Bureau's FDCPA claim.

For the reasons that follow, the Court **DENIES** Defendants' Motion.

2

## I. STANDARD

Certification under § 1292(b) is an extraordinary measure, which is permitted only in exceptional circumstances. *See McFarlin v. Conseco Serv., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004). Under § 1292(b), if a district judge certifies in writing that her non-final order (1) concerns a controlling question of law (2) where there is substantial ground for difference of opinion and (3) where an immediate appeal from the order may materially advance the ultimate termination of the litigation, then the Court of Appeals may consider whether to permit an interlocutory appeal. *See McFarlin*, 381 F.3d at 1264.

Interlocutory appeals under 28 U.S.C. § 1292(b) "were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *McFarlin*, 381 F.3d at 1259. And § 1292 disallows appeals "from any decision which is tentative, informal or incomplete" or on any matter that "remains open, unfinished or inconclusive." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). This is because an appeal gives the higher court "a power of review, not one of intervention." *Id.*

As *McFarlin* indicates, Section 1292 requires three criteria to be met before certification is permitted. However, observers and courts alike have noted that in reality the "controlling issue of law" and "materially advance the litigation" prongs of the Section 1292 operate in the same way. For example, in *Georgia State Conf. of the NAACP v. Fayette Cty. Bd. Of Commissioners*, the court

observed that "attempting to identify a controlling question as an inquiry separate from. . .whether appeal may materially advance the. . .litigation," was "artificial[]" because "[a] question of law is considered "controlling" if it "has the potential of substantially accelerating disposition of the litigation." 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013) (hereafter "*Georgia NAACP*") (citations omitted); *see also* 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD COOPER, FEDERAL PRACTICE AND PROCEDURE § 3930 at 505-07 (3d. ed. 2012) ("WRIGHT, MILLER, & COOPER") ("[t]he choice to emphasize the "controlling question of law" requirement or to emphasize instead the "materially advance" requirement often seems a matter of chance" because of how closely tied the two issues are).  After all, if the Court of Appeals were to resolve a "non-controlling" issue of law – in other words, a side issue – that would hardly be likely to "materially advance" the litigation.

The Court agrees with the observations in *Georgia NAACP* and WRIGHT, MILLER, & COOPER, and will therefore confine its analysis to whether there is substantial disagreement over the three primary issues raised by Defendants, and whether their resolution would materially advance this litigation.

### III. DISCUSSION

#### A. Substantial Ground for Difference of Opinion

Defendants contend that each of the three primary issues they seek to certify involve substantial ground for difference of opinion.  (Defs.' Motion to Certify for Interlocutory Review, Doc. 45 at 2 ("Motion").)   In particular,

Defendants argue that the meaningful attorney involvement doctrine and practice-of-law exclusion involve unsettled questions of federal law. (Motion at 2-4.)

Parties must clear a high bar when attempting to show that a question involves a substantial ground for difference of opinion. First and foremost, district courts must not certify issues which need significant factual development to flesh out, or which will require the circuit court to "delve beyond the surface of the record in order to determine the facts." *McFarlin*, 38 F.3d at 1259. The "substantial ground" for difference of opinion must be about a purely legal issue, not a factual one or "the application of settled law to fact." *Id.* at 1258.

Substantial ground for difference of opinion exists when a legal issue is (1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the issue. *Georgia NAACP*, 952 F. Supp. 2d at 1362; *see also U.S. ex rel Powell v. Am. InterContinental Univ., Inc.*, 756 F. Supp. 2d 1374, 1378-79 (N.D. Ga. 2010) (citing *In re Scientific-Atlanta, Inc. Securities Litigation*, No. 01-cv-1950-RWS, 2003 WL 25740734 at *1 (N.D. Ga. Apr. 15, 2003) (Story, J.) ("neither the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion.")

Importantly for this case, "the fact that the question is one of first impression, standing alone, is insufficient," because the district judge has the obligation to "analyze the strength of the arguments in opposition to the

challenged ruling" when deciding whether to certify. *In re Flor*, 79 F.3d 281, 284 (2d. Cir. 1996); *Couch v. Telescope, Inc.*, 611 F.3d 629, 634 (9th Cir. 2010). Instead, the issue must be "difficult" too. *See Rindfleisch v. Gentiva Health Svcs.*, 24 F. Supp. 3d 1234, 1239 n.5 (N.D. Ga. 2013) (denying certification of issue that "has never been decided.")

Defendants do not meet this high bar with respect to the issue of meaningful attorney involvement or the practice-of-law exclusion.[1]

### 1. Meaningful Attorney Involvement Doctrine

Defendants argue that the Court's Order should be certified because it is unsettled whether the meaningful attorney involvement doctrine under the FDCPA and CFPA applies to filing and prosecuting a debt collection complaint. Their argument is unsuccessful for a panoply of reasons.

First, this issue presents precisely the kind of fact-intensive problem that is inappropriate for certification. Defendants concede that the meaningful attorney involvement claims "involve complex and novel questions of *fact* and law." (Defs.' Reply, Doc. 56 at 4) (emphasis added).  And other district courts have noted that "whether an attorney's lack of meaningful involvement in the collections process violates the FDCPA depends on the facts and circumstances of the individual case." *Tourgeman v. Collins Financial Svcs., Inc.*, No. 08-cv-1392,

---

[1] The Court has not decided the statute of limitations applicable to the Bureau's FDCPA claims. That issue is not appropriate for certification because it has not actually been decided – so there is nothing to appeal.  More, as will be discussed below, resolution of this issue would not materially advance the litigation because the Bureau will be entitled to three years of discovery on the same issues under its CFPA claims.  Certification of the statute of limitations issue would not narrow the issues for discovery or bring the case significantly closer to trial.

2011 WL 3176453 at *9 (S.D. Cal. July 26, 2011).  The resolution of these claims will involve detailed factual inquiries about the extent and nature of attorney participation in the drafting of debt collection complaints, and whether that participation was "meaningful," rendering this matter the kind that would require the Eleventh Circuit to "delve beyond the surface of the record in order to determine the facts."  *McFarlin*, 38 F.3d at 1259; *see also Amos v. Glynn County Board of Tax Assessors*, 347 F.3d 1249, 1254 (11th Cir. 2003) (describing unpublished Eleventh Circuit order denying interlocutory review of whether tax assessment procedure was "plain, speedy, and efficient" because that inquiry was too fact-intensive) (abrogated on other grounds).  The fact-specific nature of this issue makes it inappropriate for certification.  *Id.* at 1258 (quotations omitted).

Even if Defendant could construe the application of the meaningful attorney involvement doctrine in this case as a question of pure law, their motion to certify would not succeed. This is because the application of the meaningful attorney involvement doctrine to the filing of collections lawsuits is not a "difficult" issue warranting certification.  *Georgia NAACP*, 952 F. Sup. 2d at 1362.  This Court's holding was grounded in two well-settled principles under the FDCPA.  First, the Supreme Court and Eleventh Circuit have issued very clear commandments that all attorney litigation activities, including the filing of court documents, are subject to the FDCPA unless explicitly excluded.  *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1295 (11th Cir. 2015) ("[a]bsent a statutory exception. . .documents filed in

7

court in the course of judicial proceedings to collect on a debt. . .are subject to the FDCPA.")

Second, this Court noted that "[s]everal circuit courts and many district courts in this circuit have adopted and expanded on [the] "meaningful involvement" doctrine for determining whether a debt-collection lawyer violates [the FDCPA][2] in his communications."   (Order at 34); *see also Tourgeman v. Collins Financial Svcs., Inc.*, 755 F. 3d 1109, 1124-25 (9th Cir.) (collecting circuit cases).   This Court further explained (and Defendants did not contest) that a debt-collection complaint in a lawsuit was a communication within the meaning of the FDCPA.  (Order at 36.)

This Court then put two and two together: because the meaningful attorney involvement doctrine under the FDCPA has been (correctly) adopted by district courts in this Circuit and applied to debt-collection lawyer communications, because the doctrine has not been rejected by any other circuit, and because the Eleventh Circuit and Supreme Court have been more than clear that the FDCPA covers attorney litigation activities, then the meaningful attorney involvement doctrine may apply to attorney litigation activities, depending on the circumstances proven.  The application of settled law to this case's somewhat new facts does not present a substantial ground for difference of opinion warranting

---

[2] The standard itself is grounded in the FDCPA's statutory language, which prohibits the "false representation or implication that any individual is an attorney or that any communication is from an attorney."  15 U.S.C. § 1692e(3).

certification.  *See McFarlin*, 381 F.3d at 1258 ("[t]he term 'question of law' does not mean the application of settled law to fact.")[3]

Nor are any of the other grounds that show a substantial difference of opinion found here.  Although no circuit has specifically applied the meaningful attorney doctrine to the filing of a debt collection complaint, no circuit has rejected such application.  Thus, there is no circuit split that might warrant certification.  *Georgia NAACP*, 952 F. Supp. 2d at 1362.  Defendants also have not pointed to any district court cases in this circuit rejecting the application of the doctrine, either generally or with respect to the filing of debt collection complaints in litigation.  Accordingly, there is no split amongst district courts in the Eleventh Circuit that might warrant certification.  *Id.* at 1362.  And several district courts have already applied the meaningful attorney involvement doctrine to a FDCPA claim brought by a consumer.  *E.g.*, *Bock v. Pressler & Pressler, LLP*, 30 F. Supp. 3d 283, 293 (D.N.J. 2014).

All told, this case does not present as to the meaningful attorney involvement doctrine any of the circumstances warranting certification.  There is

---

[3] Defendants present two out-of-circuit cases that they argue decline to apply the meaningful attorney involvement doctrine to the prosecution of a debt collection action.  *Taylor v. Quall* declined apply the doctrine at the summary judgment stage after the record made clear that the attorney in question was in fact meaningfully involved with the debt collection litigation at issue in that case, and is thus inapposite.  471 F. Supp. 2d 1053, 1061-62 (C.D. Cal. 2007).  *Mostofi v. Midland Funding, LLC*, is a state appellate court case bereft of analysis, and is therefore unconvincing.  117 A.3d 639 (Md. Ct. Spec. App. 2015).  These authorities are not strong enough to show substantial grounds for difference of opinion.  *See Singh v. Daimler-Benz, AG*, 800 F. Supp. 260, 263 (E.D. Pa. 1992), *judgment aff'd*, 9 F.3d 303 (3d. Cir. 1993) (one contrary opinion from another federal district court on a jurisdictional issue not enough to cause "substantial" grounds for difference of opinion).

no circuit split on this issue, no disagreement between district courts in this circuit, and the issue is not difficult or particularly novel, insofar as it involves the application of otherwise settled questions of law to a slightly new factual context. Certification is therefore unwarranted.

### 2.  Practice-of-Law Exclusion

Defendants also seek certification of the Court's holding that the practice-of-law exclusion in the CFPA does not exempt Defendants' alleged actions from the Act's coverage.  The practice-of-law exclusion provision reads:

> (1)  Except as provided under paragraph (2), the Bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice-of-law under the laws of a State in which the attorney is licensed to practice law.

> (2)  Paragraph (1) shall not be construed so as to limit the exercise by the Bureau of any supervisory, enforcement, or other authority regarding the offering or provision of a consumer financial product or service described in any subparagraph of section 5481(5) of this title –

> (A) that is not offered or provided as part of, or incidental to, the practice-of-law, occurring exclusively within the scope of the attorney-client relationship; or

> (B) that is otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service."

12 U.S.C. § 5517(e)(1)-(2).

Defendants contend that subparagraph (B) is a subcategory of subparagraph (A), intended to cover "fringe conduct" at the edges of legal

practice.  (*See* Doc. 30 at 6.)  Defendants claim that their proposed interpretation of this section is "plausible" and would avoid "nullif[ying] a great deal of the broad exclusion for the practice-of-law set forth in § 5517(e)(1)."  (Motion at 3.) Defendants also argue that that the issue is a novel one, and that the statutory language is unclear.

The Court disagrees.  First, the fact that this particular statutory provision has not been interpreted before does not by itself warrant certification.  When an issue is a "difficult" one *and* of first impression, that may sometimes mean there is "substantial ground for difference of opinion."  *Georgia NAACP*, 952 F. Supp. 2d at 1363.  The key factor again is that the issue must be "difficult," not just novel.  This is sensible, as certification is plainly not necessary every time a district court interprets a new statutory provision.  *See Couch*, 611 F.3d at 634 ("the fact that no California court has addressed the precise questions at issue" does not, by itself, warrant certification) (denying certification).

Moreover, statutory language, when construed in its totality, is unambiguous, even if it could have been drafted more elegantly.[4]  (Order at 14-17.)  As discussed in the Court's Order, the statute first sets forth a "broad limitation on the Bureau's authority" to regulate attorney conduct.  (Order at 9.)[5]

---

[4] The Court noted in its Order that the statute's language is "cumbersome."  (Order at 10.) Nonetheless, taken as a whole, the statute's meaning "is clear."  (Order at 18.)

[5] The Court took note of "Congress's unusual manner of creating a broad exclusion to the Bureau's enforcement authority, and then carving out exceptions to the exclusion using double, or in fact, triple negatives, [which] appear[ed] to be the consistent, intentional style of legislative drafting employed in other sections of the statute [governing different conduct and persons,

However, the statute also "contemplates that some activities engaged in by attorneys "as part of the practice of law" may nonetheless be regulated by the Bureau," and thus the statute "provides two exceptions to the practice-of-law exclusion. . .[that] unambiguously include[] the conduct at issue here and thus provides a carve-out for the Bureau to bring its" claims.   (Order at 10.)   In particular, under the second exception, located at 12 U.S.C. § 5517(e)(2)(B), "the Bureau may exert its authority over an attorney's debt collection practice "that is otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or suit."  (Order at 12-13) (emphasis and citation removed).  Since a debt collection lawsuit is "offered" by a debt collection attorney to its creditor client "with respect to" a consumer who is not receiving legal advice or services from the debt collection attorney, the Bureau has enforcement authority over debt collection attorneys.   This interpretation is plain.

Defendants' interpretation of subparagraph (B), by contrast, turns it into a subcategory of subparagraph (A) and thus renders it a nullity – violating a primary canon of statutory interpretation.   This alone is sufficient to deny certification. *See Rindfleisch*, 24 F. Supp. 3d at 1239 (denying certification on issue of statutory interpretation because "one subsection of a statute cannot be

---

which]. . .arguably indicate[d] a careful consideration of the scope of these exclusions."  (Order at 17 n.4.)

read in a manner that negates the necessity of another subsection") (citations omitted).

In sum, the fact that the exclusion of law provision has not been interpreted before is not sufficient by itself to warrant certification. *See Georgia NAACP*, 952 F. Supp. 2d at 1363. The novelty of a legal question alone cannot carry the day here. And Defendants' proposed interpretation nullifies important statutory language by subsuming one subparagraph into another one, swallowing the first's meaning. This is not a reasonable alternative interpretation that presents substantial ground for difference of opinion. *Rindfleisch* 24 F. Supp. 3d at 1239. Accordingly, certification is inappropriate.

**B. Materially Advances the Litigation**

Finally, certification of the Court's Order is unwarranted because it is unlikely to materially advance the litigation. An appeal is likely to materially advance the litigation if it would "serve to avoid trial or otherwise substantially shorten the litigation." *McFarlin*, 381 F.3d at 1259 (when appeal would dispose of one claim out of seven, certification inappropriate).

Certification of the meaningful attorney involvement, practice-of-law exclusion, and statutes of limitation issues is inappropriate under this prong of the Section 1292(b) test. A detour of many months or a year to the Eleventh Circuit on these issues is not likely to advance this lawsuit; it is likely to delay it.

First, the Court harbors significant doubts that the Eleventh Circuit would be able to reach the meaningful attorney involvement issues which, as

13

Defendants note, implicate complicated questions of both "fact and law."  (Doc. 56 at 4.)  Because significant issues of fact remain with respect to the meaningful attorney involvement claims, certification is unwarranted.  *McFarlin*, 381 F.3d at 1258 (only "pure" questions of law are appropriate for certification).

Second, Defendants' disagreement with this Court's Order does not constitute "substantial ground for difference of opinion" concerning the Court's holdings regarding the meaningful attorney involvement doctrine or the practice-of-law exclusion.  *Couch*, 611 F.3d at 634 (a "party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference'" of opinion).  Certification is therefore inappropriate.  Instead, the best way to determine the scope and merit of this case is through discovery and further development of the complex factual issues that undergird the Bureau's claims.

Third, even if the Eleventh Circuit reversed this Court on each issue that Defendants request review on, the Bureau's claims that Defendants knowingly submitted affidavits in debt collection suits where the affiant lacked personal knowledge would still remain pending.  (*See* Doc. 56 at 5.)[6]  These claims run parallel to the meaningful attorney involvement claims, as they involve questions of attorney supervision and knowledge in filing and prosecuting collection lawsuits.  Although Defendants claim that discovery on the affidavit-related claims will be simpler and will carry a lower risk of invading attorney-client

---

[6] Defendants argue that the Eleventh Circuit could, if it wanted, reverse the Court's entire Order. This is true, as far as it goes, but they offer no detailed argument for how and why the Eleventh Circuit would dismiss the affidavit-related claims.  Thus the Court confines its analysis to the primary issues argued by Defendants.

privilege or the work product doctrine (Doc. 56 at 5), the affidavit-related claims are premised in part on attorneys' failure to properly vet or review affidavits (and contracts governing the sale of accounts), and attorneys' decisions to use those affidavits in court proceedings.  It is reasonable to expect that the affidavit-related claims will implicate many of the same discovery issues that Defendants anticipate will flow from the meaningful attorney involvement claims.[7]  Thus the litigation will not be significantly narrowed or shortened.

Finally, Defendants seek certification of the FDCPA statute of limitations issue that the Court did not decide on Defendants' Motion to Dismiss.  This issue has not actually been reached by the Court, and is therefore inappropriate for certification.  *New York City Health and Hospitals Corp. v. Blum*, 678 F.2d 392, 397 (2d. Cir. 1982) (vacating certification as improvidently granted when district court did not actually decide the certified issue, because Section 1292 allows "interlocutory appeal of orders – not interlocutory appeals of issues.")  More, resolution of the statute of limitations issue would not materially advance the litigation in this suit.  As described above, the Court does not view the issue of the CFPA's practice-of-law exclusion as being a question worthy of immediate certification.  This means that the CFPA claims – which carry a three-year statute of limitations – will remain in this case and will require discovery and an ultimate resolution.  Thus even if the FDCPA claims are subject to a one-year statute of

---

[7] The fact that the BUREAU's claims are proceeding at the motion to dismiss stage of course has no bearing on whether or not they will be ultimately successful at the summary judgment stage or trial.

limitations, the Bureau will still be entitled to discovery on the same issues and facts for a three-year period under the CFPA.  Certification is unlikely to significantly limit discovery or dispense of all or even most claims in this matter, and is thus unwarranted.  *McFarlin*, 381 F.3d at 1259 (certification must "serve to avoid a trial or otherwise substantially shorten the litigation.")

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion [Doc. 45] is **DENIED**.

**IT IS SO ORDERED** this 16th day of November, 2015.

**Amy Totenberg**
**United States District Judge**